536 So.2d 622 (1988)
Donald HEATON
v.
GULF INTERNATIONAL MARINE, INC., et al.
No. CA 87 0898.
Court of Appeal of Louisiana, First Circuit.
November 22, 1988.
*623 Ronald J. Dewhirst, Houma, for plaintiff and appelleeDonald Heaton.
Paul A. Eckert and Terrence C. Forstall, New Orleans, for defendants and appellantsGulf Intern. Marine, Inc. and American S.S. Owners Mut. Protection & Indem. Ass'n.
Before CARTER, LANIER, LeBLANC, SAVOIE and ALFORD, JJ.
LeBLANC, Judge.
Plaintiff, Donald Heaton, injured his foot on March 2, 1986, as he boarded the M/V MARK HEBERT, a vessel owned and operated by his employer, Gulf International Marine, Inc. On November 13, 1986, plaintiff filed suit against Gulf International and its insurer, American Steamship Owners Mutual Protection & Indemnity Association, Inc., seeking damages for personal injury, lost earnings, maintenance and cure and punitive damages for failure to pay maintenance and cure. On the same date, plaintiff filed a motion to reinstate maintenance and cure and requested a separate hearing on this issue. The hearing pursuant to this motion was held on April 24, 1987. The trial court rendered judgment against defendants, finding that plaintiff was entitled to past maintenance and cure *624 in the amount of $14,693.91.[1] The trial court also ordered defendants to pay future maintenance at the rate of $15.00 per day and future cure. In addition, American Steamship was found to be arbitrary and capricious in its failure to pay maintenance and cure and was cast in judgment for punitive damages in the amount of $50,000.00 and compensatory damages of $10,000.00. The trial court also awarded plaintiff $7,500.00 for attorney's fees and ordered defendants to pay all costs of the proceeding.[2]
Defendants appealed this judgment urging that the trial court erred by:
(1) failing to sustain an exception of no right of action in favor of American Steamship,
(2) denying a continuance which was sought by defendants prior to the April 24, 1987 hearing,
(3) awarding maintenance to plaintiff,
(4) finding American Steamship to be arbitrary and capricious in its failure to pay maintenance and cure to plaintiff,
(5) awarding attorney's fees to plaintiff.
Plaintiff answered the appeal seeking an increase in punitive damages, compensatory damages and attorney's fees.
Pursuant to the first assignment of error, American Steamship contends that plaintiff has no right of direct action to proceed against it pursuant to La.R.S. 22:655. This statute provides in part that the right of direct action "... [against the insurer] shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not ..., provided the accident or injury occurred within the state of Louisiana...." The Louisiana Supreme Court has interpreted this language to mean that in order for an insured third party to sue a tortfeasor's insurer directly, either the accident or injury must have occurred in Louisiana or the policy must have been written or delivered in Louisiana. Webb v. Zurich Insurance Company, 251 La. 558, 205 So.2d 398 (1967).
"The burden of proof on an exception of no right of action is on the exceptor. The well-pleaded facts of the petition and the contents of attached incorporated documents and exhibits are controlling in determining both a no cause and no right of action." (citations omitted). Morris v. Rental Tools, Inc., 435 So.2d 528, 531 (La. App. 5th Cir.1983). Plaintiff's petition alleges that he is entitled to maintain a direct action against American Steamship pursuant to La.R.S. 22:655. In order to establish that plaintiff is not entitled to maintain a direct action against American Steamship, American Steamship must prove that plaintiff's injury did not occur in Louisiana and that the American Steamship insurance policy was not written or delivered in Louisiana.
In the present case, it is undisputed that plaintiff's injury occurred offshore beyond the territorial limits of Louisiana. However, the record does not establish where the American Steamship insurance policy was written or to whom it was delivered. Therefore, we find that American Steamship has not satisfied its burden of proof. The trial court did not err in failing to grant the exception of no right of action.
Defendants next contend that the trial court erred in refusing to grant a continuance that was requested prior to the April 24, 1987, hearing in this matter. On April 15, 1987, Gulf International filed a Motion *625 to Continue and Alternative Motion To Compel. Gulf International requested that the trial on the Motion for Reinstatement of Maintenance and Cure Payments be continued until after April 24, 1987. In the alternative, Gulf International requested that the court issue an order compelling plaintiff to give his deposition and to submit to an independent medical examination. On April 24, 1987, Gulf International and American Steamship filed a Motion to Amend the Motion to Continue and Alternative Motion to Compel to include American Steamship as an additional mover in these motions. Argument on the Motion to Continue and Alternative Motion to Compel was heard on April 24, 1987. The trial court denied these motions and proceeded with the hearing on the motion for reinstatement of maintenance and cure payments.
On appeal, defendants contend that they were entitled to a continuance under the provisions of La.C.C.P. art. 1601 and 1602. La.C.C.P. art. 1602 provides "[a] continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance." When the conditions of art. 1602 are met, the granting of a continuance is mandatory. Armstrong v. State Farm Fire & Cas. Co., 423 So.2d 79 (La.App. 1st Cir.1982). An additional ground for granting a continuance is addressed in La.C.C.P. Art. 1601 which provides "[a] continuance may be granted in any case if there is good ground therefor." Under this article, a continuance rests within the sound discretion of the trial court. Sparacello v. Andrews, 501 So.2d 269 (La. App. 1st Cir.1986), writ denied, 502 So.2d 103 (La.1987).
Defendants argue that the trial court should have granted a continuance pursuant to these articles because they were unable to obtain evidence that is material to this case. Defendants contend that they were unable to secure plaintiff's deposition or to have plaintiff submit to an independent medical examination. Defendants notified plaintiff of two scheduled deposition meetings for the purpose of obtaining plaintiff's testimony and defendants notified plaintiff of two scheduled appointments with a medical doctor for the purpose of obtaining an independent medical examination. Plaintiff failed to appear for any of these scheduled appointments. Based on these attempts to obtain plaintiff's cooperation, defendants argue that they have used due diligence in attempting to obtain the material evidence they sought. Thus, they argue that the trial court erred in not granting a continuance prior to the hearing on the issue of plaintiff's entitlement to maintenance and cure.
Upon close examination of the facts of this case, we find that defendants failed to exercise due diligence in attempting to obtain plaintiff's deposition testimony prior to April 24, 1987. La.C.C.P. art. 1438 provides in part that "[a] party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action." [emphasis added] The record in this matter establishes that defendants did give notice to plaintiff of two scheduled deposition meetings for the purpose of securing plaintiff's deposition. One of the notices informed plaintiff that his deposition testimony was to be taken on February 3, 1987. However, the filing date of this notice was January 30, 1987. The record does not establish the exact date that plaintiff received this notice. However, even if he received the notice as early as the filing date, which is unlikely, plaintiff was only notified a few days in advance of the scheduled meeting. This notice was not a reasonable notice, particularly since plaintiff resided in Houma, Louisiana, and the deposition meeting was to take place in New Orleans, Louisiana. The record established that plaintiff did not own an automobile. This information was available to defendants as of November 12, 1986. Therefore defendants' notice should have allowed sufficient time for defendant to arrange transportation to the deposition proceedings. Subsequently, plaintiff received a notice on *626 April 8, 1987, that his deposition testimony was to be taken on April 9, 1987. Again, this meeting was to take place in New Orleans. This notice to plaintiff was also unreasonable.
Since defendants failed to provide reasonable notice to plaintiff of the deposition meetings, we find that they failed to act diligently in seeking to obtain plaintiff's deposition testimony. Therefore, a continuance for the purpose of obtaining plaintiff's deposition testimony was not mandated by art. 1602.
We also find that defendants failed to exercise due diligence in attempting to secure an independent medical examination of plaintiff. La.C.C.P. art. 1464 provides in part: "When the mental or physical condition of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician ..." Defendants argue that they exercised due diligence in attempting to have plaintiff submit to an independent medical examination. They contend that two medical examination appointments were scheduled with a physician located in New Orleans but that plaintiff refused to appear on both occasions. The dates of these appointments were February 3, 1987 and March 2, 1987. Although plaintiff failed to appear for these appointments, defendants did not seek a court ordered medical examination until April 15, 1987, approximately one week before the hearing in this matter was scheduled. When plaintiff failed to appear for the two scheduled medical examinations, defendants should have promptly sought a court-ordered medical examination so that the examination could have been conducted prior to the April 24, 1987 hearing, without need for a continuance of this matter. However, defendants did not seek a court-ordered medical examination until more than six weeks after plaintiff's second failure to appear for the medical examination scheduled by defendants. Since the trial court did not hear defendants' motion to compel plaintiff to submit to a medical examination until April 24, 1987, the trial judge was unable to grant defendants' motion without delaying the hearing regarding the issue of plaintiff's entitlement to mantenance and cure. Since defendants did not pursue a court-ordered examination in a diligent manner, we find that the trial court's refusal to grant a continuance for the purpose of obtaining an independent medical examination was proper.
Furthermore, we find that the trial judge did not abuse its discretion in denying the motion for a continuance pursuant to C.C.P. art. 1601. The record does not establish "good ground" for a continuance.
Defendants also allege that the trial court erred in awarding past and future maintenance awards to plaintiff. Specifically, defendants claim that plaintiff failed to prove that he actually incurred expenses for his support. Although plaintiff testified concerning various expenses that he incurred for his maintenance after his injury, defendants allege that these expenses were paid for by plaintiff's cousin rather than by plaintiff.
When maintenance is provided to an injured seaman by parents or relatives or during hospitalization, the seaman's employer is not obligated to pay maintenance to the seaman. In order to recover maintenance, a seaman must present some evidence that he actually incurred expenses for his support. He is entitled to recover expenses for the cost of food and lodging that is equivalent to the food and lodging that he would have received on the vessel. Springborn v. American Commercial Barge Lines, Inc., 767 F.2d 89, 94-95 (5th Cir.1985).
We find that the record supports the trial court's award of maintenance. Plaintiff testified that he lived with his cousin but that he paid rent each month to his cousin. He also testified that he paid one-half of the utility bill each month and he paid for his own grocery expenses. Plaintiff also testified that in order to pay his meal, rent, utility and medication expenses, he had borrowed $3,200.00 from his cousin. Based on plaintiff's testimony regarding the amount of maintenance expenses *627 that he incurred, we find that the amount of $15.00 per day which was awarded by the trial court was not manifestly erroneous.
Defendants contend that the trial court erred in refusing to allow defendants to question plaintiff regarding whether he had entered into an agreement with his cousin to repay the borrowed sums. The trial court found this information to be irrelevant. Defendants argue that the questioning was relevant to determine if plaintiff or his cousin had actually incurred the maintenance expenses.
Before defense counsel attempted to question plaintiff regarding the existence of a loan agreement, plaintiff had stated during both direct examination and cross examination that he owed his cousin $3,200.00, which he borrowed in order to pay his maintenance expenses. Based on this testimony, we find that the trial court did not act improperly in refusing to allow further questioning about the loan agreement. The specific terms of the agreement between plaintiff and his cousin regarding repayment of this loan are not relevant to these proceedings. Plaintiff's testimony that he is obligated to repay the $3,200.00 loan to his cousin establishes that his cousin did not gratitously provide maintenance to plaintiff.
Defendants also argue that the expense receipts submitted by plaintiff during trial are hearsay and are therefore inadmissible. However, we find that plaintiff's testimony regarding the amount of expenses that he incurred for his support is sufficient to sustain the trial court's award of maintenance. Therefore, it is not necessary for us to address whether the receipts were properly admitted into evidence.
Next, American Steamship argues that the trial court erred in finding American Steamship to have been arbitrary and capricious in failing to pay maintenance and cure to plaintiff. Thus, American Steamship argues that the $50,000.00 award for punitive damages and the $10,000.00 award for compensatory damages should be reversed.
The record in this case establishes that Gulf International paid maintenance of $15.00 per day to plaintiff from March 5, 1986, through August 15, 1986. Gulf International paid only a small portion of the medical expenses incurred by plaintiff during these dates. American Steamship contends that it was not informed of plaintiff's claim for maintenance and cure until the filing of this suit in November of 1986. Plaintiff presents no evidence to contradict this contention. American Steamship also contends that its attempts to investigate plaintiff's claim did not yield the documentation that was necessary to determine the veracity of plaintiff's claim. American Steamship asserts that Gulf International was involved in bankruptcy proceedings and did not maintain a business office at the time this suit was filed. Therefore, American Steamship claims it was unable to obtain any documentation from Gulf International regarding plaintiff's claim. In his brief, plaintiff also acknowledges Gulf International's bankrupt status at the time this suit was filed. However, plaintiff contends that any information possessed by Gulf International regarding plaintiff's claim was available to American Steamship, since Gulf International and American Steamship were both represented by the same defense counsel. However, the record does not establish the date that American Steamship retained defense counsel to represent it in this matter. Therefore, we cannot establish that all information available to Gulf International was likewise available to American Steamship since the beginning of this litigation.
Dr. Pete H. Rhymes, an orthopedic surgeon that treated plaintiff's foot injury, was deposed by counsel for both plaintiff and defendants on January 26, 1987. However, this deposition is not included in the record. Plaintiff contends that all of plaintiff's medical records were provided to American Steamship's counsel on January 26, 1987. However, there is no evidence in the record to confirm that medical records were actually provided to American Steamship. The evidence further establishes that American Steamship sought to obtain medical information regarding plaintiff's claim *628 by scheduling two independent medical examinations. One examination was scheduled for February 3, 1987, and the other examination was scheduled for March 2, 1987. Plaintiff failed to appear for both of these scheduled examinations.
Based on these facts, we must decide if the trial court's awards for punitive damages and compensatory damages were proper. The pertinent law was summarized in Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5th Cir.1987):
Upon receiving a claim for maintenance and cure, the shipowner need not immediately commence payments; he is entitled to investigate and require corroboration of the claim. If, after investigating, the shipowner unreasonably rejects the claim, when in fact the seaman is due maintenance and cure, the owner becomes liable not only for the maintenance and cure payments, but also for compensatory damages. These are the damages that have resulted from the failure to pay, such as the aggravation of the seaman's condition, determined by the usual principles applied in tort cases to measure compensatory damages.
If the shipowner, in failing to pay maintenance and cure, has not only been unreasonable but has been more egregiously at fault, he will be liable for punitive damages and attorney's fees. We have described this higher degree of fault in such terms as callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent. Thus, there is an escalating scale of liability: a shipowner who is in fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure. If the shipowner has refused to pay without a reasonable defense, he becomes liable in addition for compensatory damages. If the owner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees as well. (footnotes omitted)
After examining the facts of this case, we find that the trial court's award of punitive damages is manifestly erroneous. The record establishes that American Steamship took reasonable steps to investigate plaintiff's claim for maintenance and cure. Dr. Rhymes' deposition testimony was taken within a reasonable period of time after American Steamship learned of plaintiff's claim. Shortly thereafter, American Steamship scheduled two independent medical examinations but plaintiff failed to appear for these examinations. The record does not establish that plaintiff provided any medical records or medical bills to American Steamship. Based on these facts we find that plaintiff failed to prove that American Steamship was arbitrary, capricious or willful in failing to pay plaintiff's maintenance and cure claim. Therefore, the $50,000.00 award of punitive damages is reversed.
Furthermore, since an award of attorney's fees is contingent on a finding that American Steamship acted arbitrarily and capriciously, the trial court's $7,500.00 award of attorney's fees is also reversed.
In addition, we find that the record does not support the $10,000.00 award of compensatory damages. The only evidence that might tend to support an award of compensatory damages is Dr. Rhymes' testimony. Dr. Rhymes testified that surgery was performed on plaintiff's heel on March 23, 1986. Subsequently, an ulcer developed on plaintiff's heel. Dr. Rhymes explained that plastic surgery was required to facilitate healing of the ulcer but that plaintiff did not undergo plastic surgery treatment because of the insurance company's failure to approve this treatment. He also testified that plaintiff's heel took several months longer to heal since the plastic surgery was not performed. However, Dr. Rhymes also testified that he was not sure whom his office had contacted regarding this treatment; he did not know whether his office personnel had contacted Gulf International or American Steamship. Dr. Rhymes' testimony fails to establish the date upon which the need for plaintiff's subsequent surgery arose. Dr. Rhymes' *629 testimony also fails to establish that American Steamship had knowledge of plaintiff's injury or his need for treatment at that time. Thus, we cannot find that American Steamship was unreasonable in failing to approve the plastic surgery treatment. Accordingly, the $10,000.00 award of compensatory damages is reversed.
Due to a thirty-five (35¢) cent addition error in the trial court's award of maintenance and cure, we reduce this award to $14,693.56.
For these reasons, the judgment of the trial court is affirmed in part, amended in part and reversed in part. One-half of the costs of this appeal are assessed against plaintiff; the other one-half of the costs are assessed against defendants.
AFFIRMED IN PART, AMENDED IN PART AND REVERSED IN PART.
CARTER, J., concurs in part and dissents in part for reasons assigned.
CARTER, Judge, concurring in part and dissenting in part.
I concur with the majority's opinion in all respects, except its reversal of the awards for punitive damages, compensatory damages, and attorney's fees.
I do not agree that the trial court erred in finding that American Steamship was arbitrary and capricious in failing to pay maintenance and cure to plaintiff. The $50,000.00 award for punitive damages, the $7,500.00 award for attorney's fees, and the $10,000.00 award for compensatory damages should be affirmed.
In Morales v. Garijak, Inc., 829 F.2d 1355 (5th Cir.1987), the court stated:
If the shipowner, in failing to pay maintenance and cure, has not only been unreasonable but has been more egregiously at fault, he will be liable for punitive damages and attorney's fees. We have described this higher degree of fault in such terms as callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent. Thus, there is an escalating scale of liability: a shipowner who is in fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure. If the shipowner has refused to pay without a reasonable defense, he becomes liable in addition for compensatory damages. If the owner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees as well. (footnote omitted) [829 F.2d at 1358]
Punitive damages are recoverable under the general maritime law on a showing of willful and wanton misconduct by the shipowner. Harper v. Zapata Off-Shore Company, 741 F.2d 87 (5th Cir.1984); Dyer v. Merry Shipping, Inc., 650 F.2d 622 (5th Cir.1981); Reed v. Seacoast Products, Inc., 458 So.2d 971 (La.App. 3rd Cir.1984). A shipowner who arbitrarily and capriciously denies maintenance and cure to an injured seaman is liable to him for punitive damages and attorney's fees. Breese v. AWI, Inc., 823 F.2d 100 (5th Cir.1987); Yelverton v. Mobile Laboratories, Inc., 782 F.2d 555 (5th Cir.1986).
It is also clear that awards of punitive damages and attorney's fees in cases involving the failure to pay maintenance and cure are grounded on the same standards. Both awards must be grounded on the same type of egregious shipowner conduct exhibiting wanton and intentional disregard of a seaman's rights. Breese v. AWI, Inc., supra; Harper v. Zapata Off-Shore Company, supra. What is not so settled, however, is the type of conduct on the shipowner's part that will entitle a seaman to punitive damages and attorney's fees.
In Holmes v. J. Ray McDermott & Company, Inc., 734 F.2d 1110 (5th Cir.1984), the court described the type of conduct which gives rise to punitive damages and attorney's fees as follows:
Conduct that gives rise to damages for the termination of maintenance and cure has been characterized as "callous and recalcitrant," "arbitrary and capricious," and "willful, callous, and persistent." Laxness in investigating a claim that would have been found to have merit has been found to meet the standard, as has *630 a finding that the employer had "no reasonable excuse" for its refusal. (citations omitted) [734 F.2d at 1118].
See also McWilliams v. Texaco, Inc., 781 F.2d 514 (5th Cir.1986). Subsequent cases have added to the type of conduct for the termination of maintenance and cure that will subject a shipowner to liability for punitive damages and attorney's fees to include conduct which is "arbitrary and willful" and "egregious or wanton." See Tullos v. Resource Drilling, Inc., 750 F.2d 380 (5th Cir.1985) and Harper v. Zapata Off-Shore Company, supra. Recent cases have interpreted these decisions as requiring a showing of bad faith on the part of a shipowner to support an award of punitive damages or attorney's fees. "[T]he willful, wanton and callous conduct required to ground an award of punitive damages requires an element of bad faith." Harper v. Zapata Off-Shore Company, supra at 90.
Each case is to be evaluated on its own facts. However, "[t]he cases in which punitive damages or attorney's fees have been granted share the common element of a shipowner's default, either in failing to provide maintenance and cure or in failing to investigate an injured seaman's claim." Harper v. Zapata Off-Shore Company, supra at 89-90.
The court in Tullos v. Resource Drilling, Inc., supra, enunciated examples of specific employer behavior which could merit punitive damages to include:
(1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically. [750 F.2d at 388]
In the instant case, the record establishes that Gulf International paid maintenance of $15.00 per day to plaintiff from March 5, 1986, through August 15, 1986. Gulf International paid only a small portion of the medical expenses incurred by plaintiff during these dates.[1] American Steamship has not paid plaintiff any maintenance or cure.
On appeal, American Steamship espoused several "justifications" for its nonpayment of maintenance and cure. Generally, American Steamship claimed that they were not informed of plaintiff's claim for maintenance and cure until the filing of suit on November 13, 1986. American Steamship further claimed that plaintiff's medical records were not made available to them by Gulf International. American Steamship reasoned that the plaintiff was the sole source from which they could obtain information necessary to determine plaintiff's entitlement to maintenance and cure and that plaintiff was uncooperative. Thus, they were unable to process plaintiff's claim. In support of this contention, American Steamship specifically referred to two scheduled appointments for independent medical examinations. The record reveals that the appointments were scheduled for February 3 and March 2, 1987. Notice of the February 3, 1987, appointment was not given to plaintiff's counsel until January 30, 1987. Further, notice of the March 2, 1987, appointment was given to plaintiff's counsel by letters dated February 16 and 26, 1987. American Steamship also referred to two scheduled depositions, which were noticed for February 3 and April 9, 1987, and the notices were sent to plaintiff's counsel on or about January 30 and April 7, 1987, respectively.
The majority apparently disregards the trial judge's findings that American Steamship's actions in denying maintenance and cure were arbitrary and capricious. The majority also fails to recognize those provisions in the law, which clearly support the trial judge's finding that American Steamship is liable to plaintiff for punitive damages, attorney's fees, and compensatory damages.
The record clearly reveals that American Steamship did not take reasonable steps to investigate plaintiff's claim for maintenance and cure. Although American Steamship claimed that their failure to pay *631 maintenance and cure was, in part, due to their lack of knowledge, the evidence clearly demonstrates otherwise. By their own admission, American Steamship learned of plaintiff's claim on or about November 13, 1986. American Steamship does not dispute that between the filing of the suit on November 13, 1986, and the date of the hearing on the motion to reinstate maintenance and cure on April 24, 1987, it failed to pay plaintiff any benefits, including his medical expenses and offered no reason for such nonpayment.
The record reveals that Dr. Peter Rhymes, plaintiff's treating physician, was deposed within a reasonable period of time after American Steamship learned of plaintiff's claim. Dr. Rhymes testified that he sent medical records to American Steamship. Evidence in the record clearly reveals that Dr. Rhymes' office personnel contacted Seahawk, the insurance broker involved in transactions between Gulf International and American Steamship, relative to the medical bills. These calls were made as early as September, 1986. Dr. Rhymes also stated that he sent the company regular and routine medical reports. Further, despite American Steamship's contention that they could not obtain information, the record is devoid of any motions to produce, requests for production, subpoenas, or any other discovery device seeking to obtain copies of the medical records or reports regarding plaintiff's medical condition.
The attempts at discovery that were made to obtain an independent medical examination and plaintiff's deposition were never followed through, primarily because American Steamship was under the misconception that they would obtain a continuance and have additional time for discovery.
Notices of the appointments for independent medical examinations were made, and notices were sent only a few days before plaintiff was to be examined. The appointments were scheduled in New Orleans, some sixty-five miles from plaintiff's home. The trips were contemplated to be made by plaintiff at his own expense. Plaintiff did not own an automobile, was on crutches and had problems with his injured foot due to swelling, and had little or no money to finance the trip to New Orleans. The evidence of record shows that plaintiff was not receiving any income at the time of these scheduled medical appointments. A trip to New Orleans, even if it could have been arranged, would have necessitated certain expenditures for plaintiff. The record clearly indicates that plaintiff could not afford to pay for trips to New Orleans. Further, even if plaintiff's refusal to go to New Orleans could be viewed as uncooperative, defendants had other remedies available. They could have sought to compel a court-ordered medical examination of plaintiff. Instead, defendants chose to simply refuse plaintiff's claim for maintenance and cure.
Similarly, the notices for plaintiff's deposition were sent to plaintiff's counsel of record only one or two days prior to the date on which the deposition had been scheduled. Also, American Steamship did not file any pleadings to compel plaintiff's attendance or attempt to elicit any information from plaintiff via interrogatories or other discovery devices.
Additionally, a careful examination of the record reveals that several of the pleadings filed in the instant case on behalf of American Steamship were filed as joint pleadings on behalf of both Gulf International and American Steamship and shows that both of these defendants were represented by the same attorney. While American Steamship strenuously denied that knowledge and information possessed by Gulf International was available to them, American Steamship sought to use, to their benefit, the notices of deposition and correspondence requesting independent medical examinations filed solely by Gulf International. American Steamship appears to want the best of both worldsto deny knowledge undisputably possessed by Gulf International and to represent Gulf International's discovery attempts as their own.
Since American Steamship made no serious attempt to sufficiently investigate plaintiff's claim until approximately a week *632 to ten days before the trial of this matter, American Steamship did not have information to lead it to believe that a good faith question of fact existed concerning the extent and causal relationship of plaintiff's injury to provide them with a reasonable and adequate justification to refuse payment of maintenance and cure benefits. See Simmons v. Hope Contractors, Inc., 517 So.2d 333 (La.App. 1st Cir.1987), writ denied, 518 So.2d 510 (La.1988).
Based on the above, I cannot say that the trial court was manifestly erroneous in finding that American Steamship was arbitrary, capricious, and willful in failing to pay plaintiff's maintenance and cure claim. I believe that the majority errs in reversing the punitive award to plaintiff.
Furthermore, since an award of attorney's fees is contingent on a finding that American Steamship acted arbitrarily and capriciously, I submit that the record also supports the trial court's award of $7,500.00 in attorney's fees.
Additionally, the record supports the trial judge's award of compensatory damages. Generally, if the shipowner unreasonably rejects the claim for maintenance and cure, when in fact the seaman is due maintenance and cure, the owner becomes liable not only for the maintenance and cure payments, but also for compensatory damages. Refusal to pay maintenance and cure without a reasonable defense has been held to give rise to compensatory damages. Morales v. Garijak, Inc., supra. Compensatory damages are the damages that have resulted from the failure to pay, such as the aggravation of the seaman's condition, determined by the usual principles applied in tort cases to measure compensatory damages.
In the instant case, Dr. Rhymes testified that surgery was performed on plaintiff's heel on March 23, 1986. Subsequently, an ulcer developed on plaintiff's heel. Dr. Rhymes explained that plastic surgery was required to facilitate healing of the ulcer, but that plaintiff did not undergo plastic surgery treatment because of the insurance company's failure to approve this treatment. He also testified that plaintiff's heel took several months longer to heal since the plastic surgery was not performed. Dr. Rhymes' testimony establishes that American Steamship had knowledge of plaintiff's injury and his need for treatment at that time. Therefore, I submit that American Steamship was unreasonable in failing to approve the plastic surgery treatment and had no defense for such denial.
The trial judge determined that, in light of all of the evidence presented, American Steamship unreasonably rejected plaintiff's claim for maintenance and cure. Plaintiff was also forced to endure an extended painful healing process because of American Steamship's unreasonable refusal to pay for a recommended surgical procedure, for which the trial court awarded plaintiff $10,000.00 in compensatory damages. I submit that the trial court did not err in awarding plaintiff $10,000.00 in compensatory damages.
For the aforementioned reasons, I respectfully submit that the majority opinion is in error insofar as it reverses those portions of the trial court judgment awarding plaintiff punitive damages, attorney's fees, and compensatory damages. Therefore, I respectfully dissent from those portions of the majority opinion.
NOTES
[1] Gulf International had previously paid maintenance in the amount of $15.00 per day from March 5, 1986 through August 31, 1986. The trial court's judgment awarded maintenance from September 1, 1986 to April 24, 1987 in the amount of $3,540.00, medical expenses in the total amount of $10,951.97 and travel expenses in the amount of $201.59. The medical expenses actually totalled only $10,551.97. However, the judgment includes a $400.00 expert witness fee in the itemization of maintenance and cure expenses. Although the expert witness fee was not properly classified as a maintenance and cure expense, the $400.00 award to plaintiff was proper since the judgment also assessed costs against defendants.
[2] Since American Steamship established that Gulf International's insurance coverage was subject to a $5,000.00 deductible, the trial court granted a $5,000.00 credit toward the past due maintenence and cure in favor of American Steamship.
[1] From the record, it appears that Gulf International filed for relief in the bankruptcy courts and was not operating for business sometime after plaintiff's injury.