722 So.2d 1064 (1998)
Terrence E. FOX
v.
TEXACO, INC.
No. 97 CA 2126.
Court of Appeal of Louisiana, First Circuit.
November 6, 1998.
Rehearing Denied December 28, 1998.
*1066 J.B. Jones, Cameron, for Plaintiff-AppellantTerrence Fox.
Michael M. Caffery, New Iberia, for Defendant-AppelleeTexaco, Inc.
Jeffery M. Baudier, New Orleans, for Defendant-AppelleeTexaco, Inc.
BEFORE: FITZSIMMONS and GUIDRY, JJ., and CHIASSON, J. Pro Tem.[1]
FITZSIMMONS, Judge.
Plaintiff, Terrence Fox, appeals from a verdict and judgment notwithstanding the verdict for injuries sustained while working for defendant, Texaco, Inc. The jury awarded the following:

$ 165.00  past medical expenses
$ 14,000.00  future medical expenses
$ 12,841.00  past physical and mental pain and suffering
$ 0.00  future pain and suffering
$ 50,916.00  past loss of earning capacity
$ 110,333.00  future loss of earning capacity
____________
$ 188,255.00  TOTAL

After granting the plaintiff's motion for judgment notwithstanding the verdict, the trial court determined that plaintiff was additionally entitled to an award for future pain and suffering and disability in the sum of $48,000.00.
Mr. Fox asserts in his appeal that the jury erred: in its failure to award "maintenance;" failure to award pre-judgment interest; and, inadequate awards of general damages and past loss of earning capacity. Finally, it is alleged that the judge failed to enter judgment in accordance with the jury's finding as to "cure" or to award adequate future general damages.
Texaco, Inc. answered the appeal. It alleged as error that the jury abused its discretion in its award of $50,916.00 in past loss of earning capacity and in its award of $110,333.00 in future loss of earning capacity.

CURE
"Maintenance and cure" is an ancient duty imposed upon the owner of a ship to provide food, lodging and necessary medical services to seamen who become ill or injured during service to the ship. Davis v. Odeco, Inc., 18 F.3d 1237, 1245 (5th Cir. 1994), cert. denied, Murphy Exploration & Production Company v. Davis, 513 U.S. 819, 115 S.Ct. 78, 130 L.Ed.2d 32 (1994). The burden of proof in seeking maintenance and cure is relatively light because recovery is *1067 not contingent upon negligence or fault of the vessel or its owner. Generally, a seaman need only prove that the injury arose during his service of the vessel; no causal connection to his duties need be shown. Comeaux v. Basin Marine, Inc., 93-1624, p.5 (La.App. 1st Cir.6/24/94); 640 So.2d 833, 836, writ denied, 94-2307 (La.11/18/94); 646 So.2d 386.
"Cure" includes medical, therapeutic and hospital expenses, until that point in time when plaintiff reaches maximum medical recovery. Milstead v. Diamond M. Offshore, Inc., 94-1582, p. 24 (La.App. 3rd Cir.9/6/95); 663 So.2d 137, 150, rev'd on other grounds, 95-2446 (La.7/2/96); 676 So.2d 89. In the case sub judice, the jury found that the plaintiff was entitled to "cure;" however, the trial court judgment did not reflect that finding. In its reasons for decisions, the trial court stated that it interpreted the jury's responses to the verdict sheet, in which it awarded the plaintiff future medical expenses to satisfy their positive response to the award of "cure." We find this inference to constitute legal error.
Maintenance and cure is an action ex contractu, pursued via a separate cause of action or theory of recovery than negligence for injuries caused by unseaworthiness of a vessel. Perry v. Allied Offshore Marine Corp., 618 So.2d 1033, 1035 (La.App. 1st Cir. 1993). Ordinarily, a seaman need only prove that he was in the service of the vessel when the injury arose. Comeaux, 93-1624 at p. 5; 640 So.2d at 836. The jury's express factual finding that the plaintiff was due "cure" under maritime law was unambiguous. It is subject to the "clearly erroneous" standard of review. Id. The evidence is supportive of the jury's finding that "cure" would apply in this matter. The jury's past and present award of medical expenses clearly demonstrates that it believed Mr. Fox's injuries to have been job-related and not to have reached the point of maximum medical recovery. An explicit grant of cure cannot be judicially subsumed into the jury's independent findings on separate and distinct claims. Accordingly, the trial court judgment should be amended to reflect the incorporation of the jury's finding of "cure."

MAINTENANCE
"Maintenance" is designed to provide a seaman with a sum for food and lodging expenses that he would have otherwise received on the vessel, if he had not been injured. Heaton v. Gulf International Marine, Inc., 536 So.2d 622, 626 (La.App. 1st Cir.1988). Maintenance payments may only be credited against amounts awarded that are the substantial equivalent of maintenance. Jenkins v. Kerr-McGee Corporation, 613 So.2d 1097,1107 (La.App. 3rd Cir.), writs denied, 616 So.2d 701 (La.1993) and 616 So.2d 702 (La.1993), citing, Colburn v. Bunge Towing, Inc., 883 F.2d 372, 378 (5th Cir. 1989). Maintenance paid may not be deducted from an award for past lost wages. Jenkins v. Kerr-McGee Corporation, 613 So.2d at 1107, citing Phillips v. Western Company of North America, 953 F.2d 923 (5th Cir. 1992)
Generally, maintenance and cure are awarded jointly. The jury in the instant case, however, found that Mr. Fox was entitled to cure, but not to maintenance not provided by Texaco. A resolution of this issue hinges on the existence vel non of a reasonable basis for the jury's failure to recognize the plaintiff's right to maintenance, given its award of cure.
Our review of this issue on appeal is shaped by the general rule that factual findings will not be disturbed in the absence of manifest error. An appellate court's reversal of a jury or trial court's factual finding necessitates a determination that the record does not support the existence of a reasonable factual basis for the finding, such that it is clearly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Notwithstanding an appellate court's independent evaluations and inferences being considered preferable by it to those of the factfinders, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, 617 So.2d at 882-883.
*1068 In the case under consideration, Mr. Fox continued to work on a full-time basis until his position was terminated. The jury found that he worked, despite a medical condition that had not reached maximum cure. Such a finding would bear a reasonable basis for a jury's determination that Mr. Fox could be due cure, but not maintenance for that period of time until he was terminated. Even casting this latter thought to the void, the parties stipulated at trial that maintenance would not begin until January 1, 1995, the date of Mr. Fox's termination.
After January 1, 1995, Mr. Fox was unemployed. The jury awarded cure for future medical treatment; it thereby implicitly found that Mr. Fox had not reached maximum medical cure. The failure of the jury to coextensively award maintenance from that period of time when Mr. Fox was terminated, until the point at which he reaches maximum medical recovery after the operation in the future, is inconsistent with the foundations upon which maintenance and cure are premised. We thus find that the jury's denial of maintenance for an injury that occurred during his service as a seaman for the period of time when he was unemployed, and would necessitate food and lodging, to be clearly wrong. The denial of maintenance is reversed. It is awarded pursuant to the formula stipulated by the parties prior to trial, i.e., in the sum of $20.00 per day from January 1, 1995 until the point of maximum medical recovery in the future.

PRE-JUDGMENT INTEREST
Mr. Fox seeks the award of pre-judgment interest for past due maintenance that is claimed on appeal. This court's affirmance of the jury's denial of maintenance for the period of time between the injury and the trial obviates that assertion. This assignment of error lacks merit.

ADEQUACY OF PAST GENERAL DAMAGES
Mr. Fox submits that the jury's award of $12,841.00 in damages for pain, suffering and disability was unreasonably low. In reviewing damage awards, discretion is left with the trier of fact. La. C.C. art. 2324.1. The parameters of review of general damage awards by an appellate court are limited to a determination of whether the exercise of discretion by the trial court or jury has been abused. Andrus v. State Farm Mutual Automobile Insurance Company, 95-0801, p. 8 (La.3/22/96); 670 So.2d 1206, 1210; See also Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976). It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
After a thorough review of the medical etiology and testimony in the instant matter, we do not find that the jury abused its much discretion in making its award. When viewed in a light most favorable to the plaintiff, the award in this matter is not beyond that which a reasonable trier of fact could assess for the particular effects of the knee and neck injuries to Mr. Fox. See Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).

FUTURE GENERAL DAMAGES
In a judgment notwithstanding the verdict, the trial court increased Mr. Fox's award for future general damages to the sum of $48,000.00. Plaintiff/appellant appeals that judgment as abusively low.
The jury awarded the plaintiff the sum of $12,841.00 for past physical and mental pain and suffering. Following the fall, Mr. Fox underwent knee surgery in November, 1993. He testified that upon his return to work thereafter, he was not totally pain free. Additionally, he stated at trial that his neck condition had steadily worsened toward the end of 1994 to the point in March, 1995 when his activities were restricted, the pain had become constant, and he began to incur headaches.
Dr. Gidman, an orthopedic surgeon, diagnosed bilateral spondylosis at the C-5/C-6 *1069 levels with foraminal stenosis. He opined that the preexisting arthritic condition precipitated an aggravation of the associated nerves. Dr. Gidman believed that the condition was a permanent one, that Mr. Fox would have to learn to tolerate throughout his life. He assigned a fifteen (15%) percent physical disability of the body. Dr. Lee Leonard, another physician, who treated the plaintiff primarily for his knee condition, also assigned a permanent impairment of fifteen (15%) percent.
Dr. Thomas V. Bertuccini, a neurosurgeon, agreed that the injury to the nerve caused the pain, and he recommended conservative treatment. He stated that it was not appropriate for Mr. Fox to return to work at the time of the trial since he was still symptomatic. Dr. Bertuccini indicated that, generally, if a patient experienced symptoms over an extended period of time, it is more likely than not that he would continue to have symptoms indefinitely.
Dr. Blanda, an orthopedic surgeon, diagnosed the plaintiff's condition as aggravation of cervical spondylosis; however, he recommended surgery if the patient could not live with persisting symptoms. Mr. Fox had unequivocally indicated that he wanted to undergo the surgery because his neck symptoms had become worse over time.
The jury's award of $14,000.00 in future medicals correlates with the estimated cost of cervical surgery that had been denied by the employer. Moreover, the jury awarded Mr. Fox $12,841.00 in past general damages for physical and mental pain and suffering that he incurred during the two year period prior to the trial. The medical experts, with the exception of Dr. Blanda, testified that Mr. Fox's symptoms of pain would probably extend throughout his lifetime. Dr. Blanda felt that, as a last resort, the surgery might alleviate some of the pain; however, he did not render a prognosis for this patient. Thus, there is no definitive medical support for the prospective elimination of pain. Dr. Bertuccini even stated that the pain might be worsened postoperatively. Given the anticipation of continued lifetime pain for this individual in the future, we find that the court abused its discretion in its minimal award of $48,000.00 for future pain and suffering.
Our independent review of comparable cases involving cervical fusions, particularly within the first circuit court of appeal, reveals a monetary range from $85,000.00 to $300,000.00. See American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d 429, 434 (La.1991)[general damage award lowered on appeal to $150,000.00]; Johnson v. State, Department of Public Safety and Corrections, 95-0003, p. 7-8 (La.App. 1st Cir.10/6/95); 671 So.2d 454, 459, writ denied, 95-2666 (La.1/5/96); 667 So.2d 522 [general damage award of $85,000.00]; Rochel v. Terrebonne Parish School Board, 93-0383, p. 5 (La.App. 1st Cir.5/20/94); 637 So.2d 753, 756-7, writ denied, 94-1613 (La.10/7/94); 644 So.2d 633 [general damage award of $125,000]; Wiggins v. Exxon Corp., 590 So.2d 1209, 1211-12 (La.App. 1st Cir. 1991), writ denied, 595 So.2d 660 (La.1992) [general damage award of $100,000]; Danos v. McDermott Inc., 563 So.2d 968, 973 (La. App. 1st Cir.), writ not considered, 566 So.2d 386 (La.1990) [general damage award of $90,000.00]. Accordingly, we raise the sum awarded to Mr. Fox for future pain and suffering and disability to $85,000.00, which is the lowest appropriate sum within the trial court's discretion. See Andrus v. State Farm Mutual Automobile Insurance Company, 95-0801, at p. 8 (La.3/22/96); 670 So.2d at 1210.

PAST AND FUTURE LOSS OF EARNING CAPACITY
Texaco complains of the jury's award for "past loss of earning capacity" and "future loss of earning capacity". Rightfully so. The terms are so ambiguous that the jury's straight forward desire to compensate for what is commonly known as past lost wages and future lost wages was excreted in new language termed loss of past and future "earning capacity". These two concepts are as different as carrots and beets. Thus, appellate review becomes an exercise in dissective surgery: what did this jury truly wish to do to be fair and grant justice?
*1070 We conclude that the use of the term "earning capacity" bled over the minds of the ordinary juror, depriving him or her of what all of this sophisticated terminology legally means. The jury's foremost desire was to render a just verdict. Therefore, we conclude that the jury gave $50,916.00 for past lost wages. This sum was meant to be all inclusive of whatever economic loss Mr. Fox sustained during the period between injury and trial. They then gave "future loss of earning capacity" in the amount of $110,333.00.
While the normal calculation of this amount dates back to the time of the accident, it is obvious that the jury divided this compensation. Thus, the amount for "future loss of earning capacity" was limited by them to the continuum of time between trial and a working life into the future. This is the reason why the figure rendered does not correspond to any specific figure tended by any expert.
Applying these precepts to the instant case, in order to recover for past lost earnings the plaintiff bears the burden of proving the sum that he or she would have in all probability been earning at the time of trial. Coco v. Winston Industries, Inc., 341 So.2d at 338. Past lost earnings are specific in nature; therefore, they are subject to mathematical computation based upon the proof supplied. Spangler v. Wal-Mart Stores, Inc., 95-2044, p. 6 (La.App. 1st Cir.5/10/96); 673 So.2d 676, 680, writs denied, 96-1407, 96-1450 (La.9/27/96); 679 So.2d 1353.
It is averred by Texaco, Inc. that the only medical evidence submitted into evidence indicates that the plaintiff was capable of working between January 1,1995 and the time of trial. However, a review of the record does not substantiate this contention. Dr. Bertuccini contrarily testified that it was not appropriate for the plaintiff to return to work at the time of trial due to his continued symptomatic status. He felt that his capability to tolerate light duty would depend on his experience when he tried to do so. Dr. Leonard and Dr. Juneau likewise stated that Mr. Fox's work capability was limited by any resulting pain.
Donald W. Cornwell, an expert in the field of economics, testified on behalf of the plaintiff. He indicated that his gross earnings in 1995 had been $52,980.00, combined with a deferred 401(K) plan, valued at $6,864.00. Dan Cliffe, who testified as an economic expert on behalf of Texaco, Inc., estimated the past economic loss from January 1,1995 until the trial date to be $77,383.00. Given the expert testimony, we find that the jury had a reasonable basis for its factual determination that Mr. Fox was unable to return to employment prior to trial. The jury's selection of $50,916.00 in past economic loss is the lower of the monetary figures presented by the experts; it is therefore, a fortiori, not an abuse of its discretion.
Turning to the issue of loss of earning capacity, we note that an award of loss of earning capacity is founded upon the difference between a plaintiff's earning capacity before and after an injury. Martino v. Sunrall, 619 So.2d 87, 90 (La.App. 1st Cir.), writ denied, 621 So.2d 821 (La.1993). Moreover, awards for loss of earning capacity are speculative in nature, and, therefore, they are not susceptible to mathematical certainty. Much discretion is invested in the judge or jury. Id. The standard of proof is that of reasonable certainty. See Emoakemeh v. Southern University, 94-1194, p. 8 (La.App. 1st Cir.4/7/95); 654 So.2d 474, 479.
Texaco, Inc.'s challenge to the jury's award of $110,333.00 in future loss of earning capacity is also without merit. Dr. Bertuccini, Blanda and Juneau each restricted Mr. Fox's capability of returning to the work environment by any symptoms that might manifest as a result. Although Dr. Blanda anticipated that Mr. Fox might be able to return to work after the surgery, if it proved successful, he did not say whether he would be able to be employed doing the same type of work that he had performed before.
Donald W. Cornwell testified that Mr. Fox's total economic loss, if he were unable to work from January 1, 1995 until sixty-five (65) years of age, would be $295,023.46. Dan Cliffe, contrarily, stated that the future economic loss if Mr. Fox were not able to be employed until sixty-four years, nine months (64.75) old could amount to $215,695.00, excluding his 401(K) and thrift plans. Additionally, he testified that if he were able to *1071 earn minimum wage until that age, his loss in earnings would be between $100,125.00 and $105,123.00. This figure excluded any value for possible lost fringe benefits.
The jury awarded Mr. Fox the sum of $110,333.00. The sum is extremely close to the projected loss of future earning capacity by the defendant's expert, provided Mr. Fox is able to work for minimum wage income. The jury evidently believed that Mr. Fox would not be able to return to his former type of employment. The sum awarded supports the conclusion that Mr. Fox would probably be able to perform work at a minimum wage level in the future. Based upon the evidence presented at trial, we cannot say that the jury's determination that the plaintiff was entitled to the sum of $110,333.00 in loss of future earning capacity was unreasonable.
In sum, the judgment of the lower court is reversed to the extent that maintenance is hereby awarded for the period of time from Mr. Fox's termination from employment until maximum medical recovery in the future; the judgment is amended by this court to award "cure" in accordance with the jury's verdict; it is, additionally, amended relative to the issue of future pain and suffering to award plaintiff the sum of $85,000.00. In all other respects it is affirmed. Costs associated with the appeal are assessed to defendant, Texaco, Inc.
REVERSED IN PART AND RENDERED; AMENDED IN PART, AND AS AMENDED, AFFIRMED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme court.