640 So.2d 833 (1994)
Adam Joseph COMEAUX, Sr. and Mary Alice Hargrave Comeaux
v.
BASIN MARINE, INC.
No. 93 CA 1624.
Court of Appeal of Louisiana, First Circuit.
June 24, 1994.
Rehearing Denied August 17, 1994.
*834 R. Scott Ramsey, Jr., Berwick, for plaintiff-appellee.
Alan K. Breaud, Michael G. Lemoine, Lafayette, for defendant-appellant Basin Marine, Inc.
Before CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment awarding plaintiff maintenance and cure under general maritime law.

FACTS
In March of 1992, Adam J. Comeaux, Sr. was employed as a deckhand for Basin Marine, Inc. ("Basin Marine"), a small family-owned tugboat company located in Berwick, Louisiana. On March 6, 1992, Comeaux boarded the M/V RICOHOC. The only other *835 persons on board were Captain Paul Billiott and Relief Captain Frank Reed.
On March 27, 1992, upon crew change, Comeaux helped the replacement deckhand haul groceries from the company truck to the vessel. At approximately 12:30 p.m., Comeaux and Reed left the site in a company truck, with Reed driving, traveling home toward Morgan City. Upon arrival at Comeaux's home at approximately 2:30 p.m., Reed watched Comeaux exit the truck, walk to the back of the truck, unload a suitcase and a large bag, and walk across the yard to his house.
Comeaux's wife, Mary Alice, telephoned him at approximately 2:40 p.m. They discussed that her husband was having back pain, so she advised him to make an appointment with a physician for that afternoon. When Mary Alice arrived home at approximately 5:15 p.m., her husband got into the car, and she drove him to Blair Chiropractic Clinic. Comeaux was seen by Dr. Blair for complaints of back pain and stiffness. Comeaux previously had been treated by Dr. Blair in 1981 and 1988 for back pain.
Dr. Blair continued to treat Comeaux on March 28, 30, and 31, 1992. On March 31, 1992, Comeaux went to Basin Marine's office, which is located several blocks from his home, and presented to Iva Jean Guillory, the owner of the company, a slip from Dr. Blair, stating that he was incapacitated and could not return to work.
On May 8, 1992, Comeaux filed a petition for damages under the Jones Act and the general maritime law,[1] alleging in paragraph nine that he had sustained an accident aboard the M/V RICOHOC. In paragraph ten, he specifically alleged, in pertinent part, as follows:
[I]n the early morning hours on or about March 26, 1992, he was instructed to tie up a barge to a dock. He had tied up the bow bit and, because of a lack of help and weariness from working double shifts, he was walking briskly to the stern of the barge. His head was in the light from the dock, but the bottom part of his body was in the dark. As he walked to the stern of the barge, his foot caught in the rear starboard bow cleat jerking his leg and back violently and causing him injuries.
Comeaux also alleged, among other things, his entitlement to maintenance and cure benefits.
Comeaux subsequently filed a motion to sever the maintenance and cure claim from the other issues, and the motion was granted by the trial court. On February 9, 1993, Comeaux's claim for maintenance and cure was heard by the trial judge, after which she took the matter under advisement. On March 24, 1993, judgment was rendered, ordering Basin Marine to pay Comeaux maintenance at the rate of $28.00 per day retroactive to March 27, 1992, until such time as he reaches maximum medical cure, and all medical cure until such time as maximum medical cure has been reached.[2]
Basin Marine appealed from the adverse judgment, assigning the following specifications of error:
1. The trial court erred in finding that Comeaux proved by a preponderance of the evidence his entitlement to maintenance and cure from Basin Marine, Inc.
2. The trial court erred in considering the pleadings to have been enlarged by the introduction of evidence regarding an injury or accident not specifically alleged by Comeaux in the pleadings.
3. Alternatively, the trial court erred in awarding a per diem maintenance rate of $28.00.

ENLARGEMENT OF THE PLEADINGS
Basin Marine contends that the trial court erred in "considering the pleadings enlarged by the introduction of evidence regarding an injury or accident not specifically alleged" by Comeaux. Particularly, Basin Marine asserts that Comeaux's petition did *836 not allege that he possibly injured his back while carrying boxes of groceries from the company truck to the vessel on March 27, 1992. Therefore, Basin Marine argues that the trial judge erred in considering this evidence in making her decision.
A review of the trial transcript indicates that Basin Marine did not object to the admission of this testimony and, in fact, elicited such testimony on cross-examination of Comeaux. Therefore, the failure to object to the admission of such evidence precludes Basin Marine from raising this issue on appeal. See LSA-C.C.P. art. 1154; City National Bank of Baton Rouge v. Brown, 599 So.2d 787, 789 (La.App. 1st Cir.), writ denied, 604 So.2d 999 (La.1992); EMW, Jr. & MKW v. JPM, 583 So.2d 511, 515 (La.App. 2nd Cir. 1991); Ortego v. Sevarg Company, Inc., 550 So.2d 340, 345 (La.App. 3rd Cir.1989).

MAINTENANCE AND CURE
A seaman's right to maintenance and cure is an issue of general maritime law. Smith v. Transworld Drilling Company, 773 F.2d 610, 616 (5th Cir.1985). It includes receiving a subsistence allowance and reimbursement of medical expenses actually incurred. Moreover, the shipowner must take all reasonable steps to ensure that the seaman receives proper care and treatment. Maintenance and cure is designed to provide the seaman with food and lodging when he becomes sick or injured. Jordan v. Intercontinental Bulktank Corporation, 621 So.2d 1141, 1153 (La.App. 1st Cir.), writs denied, 623 So.2d 1335, 1336 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 926, 127 L.Ed.2d 219 (1994).
The right to maintenance and cure is broad, and the burden of proof is relatively light since recovery is not dependent on negligence or fault of the vessel or its owner. Freeman v. Thunder Bay Transportation Company, Inc., 735 F.Supp. 680, 681 (M.D.La.1990). Ordinarily, a seaman who seeks maintenance and cure need prove only that the injury or illness arose while he was in the service of the ship. Freeman v. Thunder Bay Transportation Company, Inc., 735 F.Supp. at 681. No causal connection to his duties need be shown, and a seaman's entitlement to maintenance and cure is entirely unrelated to any fault or negligence on the part of the shipowner. Liner v. J.B. Talley and Company, Inc., 618 F.2d 327, 332 (5th Cir.1980). A seaman must establish his right to maintenance and cure with that degree of proof required in ordinary cases, which means more than mere speculation or conjecture. Sylvester v. Offshore Food Service, Inc., 217 So.2d 430, 436 (La.App. 1st Cir. 1968).
Factual findings made by a trial court in a claim under general maritime law are reviewed under the clearly erroneous standard, which is the same manifestly erroneous or clearly wrong standard of review used by Louisiana appellate courts in reviewing factual findings of lower courts. Mistich v. Pipelines, Inc., 609 So.2d 921, 928-29 (La.App. 4th Cir.1992), writ denied, 613 So.2d 996 (La.1993), cert. denied, ___ U.S. ___, 113 S.Ct. 3020, 125 L.Ed.2d 709 (1993).
In Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882-83 (La.1993), the supreme court commented on the manifest error/clearly wrong standard as applied to factual findings based largely on the credibility of fact witnesses. The court stated:
[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that `if the trial court or *837 jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'"
This court has recognized that "[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. (Citations omitted).
In the instant case, the testimony reveals the following: Adam J. Comeaux, Sr., forty-five years of age, testified that he began working for Basin Marine on September 6, 1991, at which time his physical condition was good. His last hitch with Basin Marine began on March 6, 1992, at which time Comeaux stated he was not experiencing any back pain. Comeaux indicated that, during the early morning hours of March 26, 1992, he walked onto the hopper barge so that he could tie it to the dock. As he was walking on the barge, he tripped over a cleat, causing him to fall forward and his body to twist, and he suddenly felt stiffness and pain in his back. Comeaux stated that, immediately after he tripped, he spoke to Captain Billiott, who was standing on the vessel approximately six to seven feet away, and Captain Billiott asked whether he was "okay." Comeaux stated that he did not report the incident to either Billiott or Reed because he did not think the problem was severe, and he was scheduled to disembark the vessel on the following day. After tripping, Comeaux continued to work, performing his regular duties.
On the following day, March 27, 1992, at approximately 12:30 p.m., the replacement crew arrived, and Comeaux helped carry boxes of groceries from a company truck to the vessel. Thereafter, Comeaux and Reed left in a company vehicle, with Reed driving, traveling toward Morgan City, which was approximately two and one-half hours away. Comeaux made no complaints to Reed during the drive home and did not mention the accident. At approximately 2:30 p.m., they arrived at Comeaux's home, and Comeaux exited the truck. Comeaux indicated that his wife called from work at Wal-Mart shortly after his arrival. According to Comeaux, he was stiff and experiencing back pain at that time. He then made an appointment with Blair Chiropractic Clinic and did nothing until his wife got home at approximately 5:15 p.m.
During his chiropractic appointment, Comeaux did not disclose to Dr. Blair how he had been injured. Dr. Blair gave him heat treatments and back adjustments. Over the next several days, Comeaux's condition worsened, as the pain was "traveling down [his] leg," and he was unable to sleep. Comeaux again saw Dr. Blair on March 28, 30, and 31, 1992. Dr. Blair determined that Comeaux was incapacitated and unable to work.
On March 31, 1992, Comeaux went to the Basin Marine office, which is located several blocks from his home, and presented Dr. Blair's slip to Iva Jean Guillory, the owner of the company. At that time, Comeaux was on crutches and in great pain. Comeaux testified that he told Guillory that he had hurt his back, but did not mention how he had done so. Subsequently, Comeaux saw a Dr. Albert, who prescribed pain medication and muscle relaxers and recommended that Comeaux have x-rays and a CT scan performed. Comeaux later saw Dr. Pete Rimes at the request of the Social Security Administration.
Comeaux testified that previously he had gone to Dr. Blair for back pain in 1981 and 1988. However, he explained that the 1988 pain was on the right side of his back and that neither the 1981 nor the 1988 pain had been nearly as intense as his present pain. Comeaux acknowledged that the 1988 pain onset occurred in church and was not triggered by an accident. Comeaux stated that he now experiences pain across his back, down into his left hip, and into the calf of his left leg. Comeaux indicated that his present back pain began while he was working on the *838 M/V RICOHOC and that carrying the groceries onto the vessel and the long ride home might have contributed to the pain. Comeaux stated that he reported the incident on March 31, 1992, because he was not able to return to work on the Friday of crew change.
On cross-examination, counsel for Basin Marine introduced a tape recorded statement taken from Comeaux on April 7, 1992. In the statement, Comeaux stated that he first experienced back pain when unloading the groceries and that, when he tripped over the cleat, only his foot was hurt. However, Comeaux maintained that the pain began when he tripped over the cleat.
Comeaux's wife, Mary Alice, testified that she had been married to her husband for sixteen years and that they had four children, ages sixteen, fourteen, twelve, and nine. She indicated that, prior to March of 1992, her husband was strong, active, and could do anything he wanted to do. Mary Alice stated that, on March 27, 1992, she called her husband and he told her that he was experiencing back pain. When she returned home at approximately 5:15 p.m., she noticed that her husband was a little stiff and did not move normally. Mary Alice then drove him to Blair Chiropractic Clinic.
Mary Alice testified that her husband has not worked since March 27, 1992, and that, since then, they have lived on her income and food stamps. According to Mary Alice, the church has paid their rent. Mary Alice stated that her husband is unable to care for himself, cannot walk unassisted, cannot work or bend, and is physically and mentally weak. At the time of trial, Mary Alice had recently moved out of the family home, taking with her two of their children.
Dr. Rene Dunlap, chiropractor, testified that is a partner in Blair Chiropractic Clinic and that Dr. Blair is her father. She stated that her father had treated Comeaux in 1988 for low back and leg pain, but that the pain was less intense than the pain he experienced in 1992. Dr. Dunlap assumed treating Comeaux on April 29, 1992, after her father experienced a heart attack. She indicated that she reviewed Comeaux's records prior to treating him and that she took a personal history from him.
Dr. Dunlap stated that Comeaux also had symptoms of left hip and left leg pain. Dr. Dunlap explained that x-rays revealed a degenerative disc at the L-5 level and that there was a diminished disc space at that level. She diagnosed Comeaux with acute traumatic lumbar sprain/strain complex with associated neurology or radiculitis into the left lower extremity and determined that the cause of his condition was tripping, stumbling, or carrying heavy items while on board the M/V RICOHOC. Dr. Dunlap opined that the onset of Comeaux's pain and disability was March 26, 1992. Dr. Dunlap stated that Comeaux was totally disabled and felt that there was nothing more that she could do for Comeaux because the chiropractic treatments were merely relieving the pain and were not improving his condition. Therefore, Dr. Dunlap suggested that Comeaux see a neurologist for further evaluation in order to determine whether underlying nerve or disc damage existed.
Iva Jean Guillory testified on behalf of the defense. She stated that she is the owner of Basin Marine, which is a tugboat company with approximately thirty employees. Guillory indicated that Comeaux boarded the M/V RICOHOC on March 6, 1992, and disembarked on March 27, 1992. She testified that she first became aware of Comeaux's back problems on March 31, 1992, when he went to the Basin Marine office on payday and presented her with the slip from Dr. Blair, indicating that Comeaux was incapacitated and was unable to return to work. Guillory indicated that Comeaux was on crutches, moaning and groaning, and that, when she asked him what had happened, he stated that he did not know, but that he did not recall it happening while on the M/V RICOHOC. Guillory insisted that Comeaux told her at least three times that he "wished" he had gotten injured while aboard the vessel so that he would have had witnesses. Guillory then investigated the incident and found that neither Reed nor Billiott was aware that Comeaux had been involved in an accident while aboard the vessel and that Comeaux had not filed a report of the accident.
*839 On cross-examination, Guillory acknowledged that her company had been having financial difficulties and that the company had an insurance policy for P & I claims with a $10,000.00 deductible. Guillory stated that Basin Marine has not paid any maintenance or cure to Comeaux because she does not believe that he was injured while aboard the M/V RICOHOC.
Captain Paul Billiott testified that he was aboard the M/V RICOHOC from March 20 through April 3, 1992. He stated that, during the early morning hours of March 26, 1992, he was asleep, but awoke when he heard the tugboat leave the hopper barge (after the barge had been tied to the dock) and walked out onto the deck outside of his room. Billiott did not recall seeing Comeaux stumble on a cleat on the hopper barge and stated that he did not even see Comeaux walk on the hopper barge. He indicated that Comeaux never reported an accident to him or complained of pain and that Comeaux did not show signs of any physical problems. Billiott acknowledged that he spoke to Comeaux during the early morning hours of March 26, 1992, but that he did not ask Comeaux if he was okay. According to Billiott, he watched Comeaux unload groceries on March 27, 1992, and did not observe any physical restrictions. Billiott recalled that, on the morning of March 27, 1992, Comeaux told him that he was going to work on his wife's car when he got home.
Relief Captain Frank Reed testified that, approximately twenty minutes after Comeaux boarded the M/V RICOHOC on March 6, 1992, he told Reed that he was experiencing back pain. He stated that, during the early morning hours of March 26, 1992, the M/V RICOHOC went into Pascagoula, Mississippi, with one loaded barge and that Comeaux tied the barge to the dock. According to Reed, while Comeaux was "tying off" the barge, Reed was at the controls in the wheelhouse. He explained that the wheelhouse is elevated and that he had a view of the barge. Reed stated that he had two spotlights shining on the barge and that he watched Comeaux "tie off" the barge. Reed explained that, when a barge is "tied off," the captain must remain at the controls in the wheelhouse to await signals from the deckhand indicating whether the barge needs to be moved one way or the other.
Reed testified that he did not witness Comeaux trip or stumble on the barge and that Comeaux did not mention the accident or indicate that he was in any sort of pain. Reed also stated that Comeaux did not exhibit any signs of physical problems and that he watched Comeaux unload the groceries, walking in a usual manner. Upon arriving at Comeaux's home, Reed watched him exit the truck, pick up a suitcase and large bag, and walk across the yard without any problems.
On cross-examination, Reed indicated that a hopper barge is a standard barge, approximately ninety-five feet long and thirty-five feet wide. The barge also has covers on it, which are approximately four feet high. Reed explained that the distances between where the covers stop and the edge of the barge are approximately twenty to thirty feet on the bow end, fifteen feet on the stern end, and two feet on each side of the barge. He stated that, on March 26, 1992, he could see fairly well down both sides of the barge, but that he could not see the deck on either side of the barge. Reed acknowledged that the cleats are located on the deck of the barge. He also testified that the bow end of the hopper barge was "tied off" first and that two spotlights were shining on the starboard side of the dock. Reed stated that, when a deckhand walks down a barge, he turns the spotlights to the side a bit so as not to blind the deckhand.
At the close of the evidence, the trial court indicated that there were issues of credibility to be considered in making a determination. She stated:
[W]hat we've got is we've got a lot of testimony, and the testimony is very interesting to me. There are some things that I thought had the ring of truth. There are some things that I thought, now, that language I'm hearing is not exactly the way that person would have said it so that raises a question in my mind as to that testimony. I've got a lot of those things going, and I want to review that testimony....
*840 After taking the matter under advisement and considering all of the evidence, the trial court ruled in favor of Comeaux, awarding him maintenance and cure. In the reasons for judgment, the trial court indicated several times that she considered Comeaux's testimony "credible." She found that Comeaux proved that his injury manifested itself while he was in the service of the ship.
After reviewing the record in its entirety, we conclude that a reasonable basis exists for the trial court's finding. It is clear that two permissible views of the evidence existed and that, in reaching her decision, the trial judge made reasonable evaluations of credibility and reasonable inferences of fact. Therefore, her choice between the conflicting views of the evidence cannot be clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So.2d at 882-83.

RATE OF MAINTENANCE
Basin Marines also contends that the trial court erred in awarding Comeaux a per diem maintenance rate of $28.00.
The amount of maintenance to which a seaman is entitled is a question of fact to be decided based upon the evidence presented to the trial court. Springborn v. American Commercial Barge Lines, Inc., 767 F.2d 89, 94-5 (5th Cir.1985); Thezan v. Maritime Overseas Corporation, 708 F.2d 175, 182, n. 9 (5th Cir.1983), cert. denied, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984); Tate v. American Tugs, Inc., 634 F.2d 869, 870 (5th Cir.1981). Any doubts or ambiguities in the application of the law of maintenance and cure are resolved in favor of the seaman. Jordan v. Intercontinental Bulktank Corporation, 621 So.2d at 1153. The trial court's determination as to the amount of maintenance will not be overturned on appeal unless clearly wrong. Thezan v. Maritime Overseas Corporation, 708 F.2d at 182, n. 9; Caulfield v. AC & D Marine, Inc., 633 F.2d 1129, 1132 (5th Cir. 1981).
Mary Alice testified with regard to the household expenses for her family, which included the following:

A. Rent $ 350.00
B. Water, electricity & gas 180.00
C. Telephone 50.00
D. Clothing 100.00
E. Gasoline, oil, auto repairs 80.00
F. Food 400.00
G. Medical and dental 210.00
H. Automobile insurance 36.00
I. Cable TV 19.00
J. Teche Finance Company 103.00
K. Teche Finance Company 167.00
L. Miscellaneous (personal needs,
 grooming items, etc.) 125.00
 _________
 Total $1,820.00

Mary Alice indicated that the rent, utilities, gas, and food expenses were basically the same, regardless of whether her husband was at home or at work. She acknowledged that the clothing expense was for the entire family, that the automobile insurance was for her personal automobile (the family had only one vehicle), that the two loans from Teche Finance Company were not for food and lodging, and that there was no cable television on the M/V RICOHOC.
In the reasons for judgment, the trial court stated that Comeaux submitted into evidence an expense sheet, setting his monthly expenses at $1,820.00. However, the trial court found that several items on the sheet should be split among the other members of the family. After considering the testimony and reviewing the expense sheet, the trial judge awarded Comeaux per diem maintenance in the amount of $28.00.
After reviewing the record in its entirety, we find that a reasonable basis exists for the trial court's award. Therefore, it is not clearly wrong.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against Basin Marine.
AFFIRMED.
NOTES
[1] Mary Alice Comeaux initially filed a claim for loss of consortium. Pursuant to Basin Marine's exception pleading the objection of no cause of action, Mrs. Comeaux's consortium claim was dismissed by judgment dated February 3, 1993.
[2] The judgment also fixed the expert witness fees of Dr. Rene Dunlap in the amount of $375.00 and ordered that Basin Marine pay all costs.