670 So.2d 1298 (1996)
Johnny GUILLIE
v.
MARINE TOWING, INC., Riverside Maritime Enterprises, Inc. and Charles L. Arnold.
No. 95-CA-355.
Court of Appeal of Louisiana, Fifth Circuit.
February 14, 1996.
*1300 Paul C. Miniclier, Alfred R. Gould, Jr., Simon, Peragine, Smith & Redfearn, New Orleans, for defendants-appellants.
Thomas A. Gennusa, II, The Law Offices of Thomas A. Gennusa, II, Metairie, for plaintiff-appellee.
Charles J. Ferrara, Metairie, for plaintiff-appellee.
Richard A. Weigand, Weigand, Levenson & Costa, New Orleans, for plaintiff-appellee.
Before GAUDIN, GRISBAUM and DUFRESNE, JJ.
GRISBAUM, Judge.
This appeal relates to a Jones Act matter wherein the defendants, Marine Towing, Inc., et al, appeal the trial court's judgment finding them to be negligent and in awarding damages. We affirm in part, reverse in part, and remand.
ISSUES
We are called upon to determine a number of specific questions, to-wit:
(1) Whether La.Code Civ.P. art. 1732(6) unconstitutionally deprives appellants of the right to a jury trial;
(2) Whether Charles Arnold, in his personal capacity, was appellee's Jones Act employer;
(3) Whether the trial court erred in finding that an accident occurred and that appellee was injured as the result of appellants' negligence;
*1301 (4) Whether the trial court erred as to the amount of maintenance and cure awarded to appellee; and
(5) Whether the trial court erred in failing to make an assignment of fault against Dravo Marine, Inc. and in failing to reduce Riverside Maritime Enterprises, Inc.'s liability by that percentage of Dravo Marine, Inc.'s fault.

FACTS AND PROCEDURAL HISTORY On the night of December 16, 1989, Mr. Johnny Guillie was employed aboard the MV JENNIFER as a deck hand. At some time between 10 p.m. and midnight on that day, the MV JENNIFER picked up a tow from another vessel in open waters in Mobile Bay. The tow picked up was a shell hopper deck barge designated JR 135, which was owned by Dravo Marine, Inc. ("Dravo").
Consistent with his duties as a deck hand, Mr. Guillie made up the tow with the push knees on the bow of the MV JENNIFER to the stern of the barge under the supervision of Captain Rusty Creppel of the MV JENNIFER and was thereafter dispatched to install running lights on the bow of the JR 135.
Mr. Guillie claims that, while returning to the MV JENNIFER, after installing the running lights on the JR 135, he bumped his head on a diagonal support beam of the shell hopper superstructure. He claims the accident occurred because the lighting aboard the MV JENNIFER was inadequate and that this accident caused the injuries of which he now complains.
On returning to the deck house aboard the MV JENNIFER, Mr. Guillie reported to Captain Creppel that he bumped his head and needed some aspirin. No further official report of the "accident" was made by either Mr. Guillie or Captain Creppel until approximately three weeks later. Both testified that they did not regard the accident as serious at the time, and no entry was made in the log to report the accident. Mr. Guillie further testified that, although his injury was painful while still aboard the vessel, he failed to complain or notify Captain Creppel of that fact because he was afraid that by complaining he would lose his job.
Neither of the parties seem to contest the trial court's finding that Mr. Guillie was a seaman as contemplated by the Jones Act, 46 U.S.C. § 688. At the time of the accident, Mr. Guillie believed he was employed by Marine Towing, Inc. ("Marine Towing"). In actuality, Marine Towing did not own any assets but was only a common paymaster. The actual employer of Mr. Guillie was Riverside Maritime Enterprises, Inc. ("Riverside"). Mr. Charles Arnold was the president of Marine Towing and was either the president or vice-president in charge of operations of Riverside. Mr. Charles Arnold and his father, Mr. Dudley Arnold, were the only principals involved in the two corporations. At the time of the accident, the MV JENNIFER was owned by Mr. Charles Arnold, Mr. Dudley Arnold, Charles' father, and Ms. Eloise Chaisson, Charles' sister.
The shell hopper barge being towed by the MV JENNIFER was owned by Dravo Marine. Prior to trial, the plaintiff settled with Dravo Marine for the sum of $2500.
After a trial on the merits, the court found that, as a matter of fact, the accident did occur in essentially the way described by the plaintiff and that plaintiff suffered injuries to his cervical spine at C4-5, C5-6, C6-7. Further, the trial court found the defendants to be negligent under the Jones Act in failing to maintain a reasonably safe work environment. The court awarded plaintiff $234,412 in damages, broken down as follows: maintenance and cure$2,685; medical expenses $24,066; general damages$80,000; loss of wages$127,661. The court also gave the defendants a $2500 credit representing the amount for which plaintiff settled with Dravo Marine. It is from this judgment that defendant, Marine Towing, appeals.

STANDARD OF REVIEW
The standard of review in a Jones Act case is the same limited standard of review as that applied by federal courts. The appellate court cannot disturb a finding of fact on the merits unless there is no reasonable evidentiary basis for the fact found. Mistich v. Pipelines, Inc., 609 So.2d 921 (La.App. 4th Cir.1992), writ denied, 613 So.2d 996 (La. 1993), cert. denied, Brown & Root, Inc. v. *1302 Mistich, 509 U.S. 913, 113 S.Ct. 3020, 125 L.Ed.2d 709.[1]
Factual findings made by a trial court on a claim under general maritime law are reviewed under the "clearly erroneous standard," which is the same manifestly erroneous or clearly wrong standard of review used by Louisiana appellate courts. Comeaux v. Basin Marine, Inc., 93-1624 (La.App. 1st Cir. 6/24/94), 640 So.2d 833.

ISSUE ONE
The threshold question presented is whether the issue of the constitutionality of the statute in question is properly before us. Our jurisprudence tells us that the plea of unconstitutionality must be specially pleaded to be considered by the court. Lemire v. New Orleans Pub. Serv., Inc., 458 So.2d 1308 (La.1994). Further, where the constitutionality of a statute is at issue, the attorney general must be served and is an indispensable party. La.Code Civ.P. art. 1880.
Here, appellants not only raised the issue of the statute's unconstitutionality in their Motion in Opposition but also raised the issue in their Motion to Annul Judgment/Motion for New Trial. Additionally, the attorney general's office was served with the motion and filed a memorandum stating the reasons the statute should be found constitutional. The trial court then considered its constitutionality and rendered judgment finding the statute constitutional.
Therefore, in view of the record in light of our jurisprudential guidelines, we find the issue of the constitutionality of La.Code Civ.P. art. 1732(6) is properly before us.
We now turn to address the question of the statute's constitutionality. La.Code Civ.P. art. 1732(6) states that "A trial by jury shall not be available in: A suit on an admiralty or general maritime claim under federal law that is brought in state court under a federal `saving to suitors' clause, if the plaintiff has designated that suit as an admiralty or general maritime claim."
Appellants contend the statute unconstitutionally violates their right to a jury trial under the Equal Protection and Due Process Clauses of the Louisiana Constitution and the Equal Protection, Due Process and Supremacy Clauses of the United States Constitution. We disagree.

SEVENTH AMENDMENT
This right to trial by jury in civil cases has not been extended to the states through the Fourteenth Amendment; thus, a denial of a jury trial in a state civil proceeding does not violate the due process clause. See Parker v. Rowan Companies, Inc., 599 So.2d 296 (La.1992).
EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION
The denial of a jury trial in a state civil proceeding also does not violate the equal protection clause of the United States Constitution. Sons v. Inland Marine Serv., Inc., 577 So.2d 225 (La.App. 1st Cir.1991); Letendre v. Fugate, 701 F.2d 1093 (4th Cir. 1983).

DUE PROCESS UNDER THE LOUISIANA CONSTITUTION OF 1974
There is no due process right to a jury trial in civil cases. See Sons, supra, at 229.

EQUAL PROTECTION CLAUSE OF THE LOUISIANA CONSTITUTION
Article I, Section 3 of the Louisiana Constitution, in pertinent part, provides:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition or political ideas or affiliations.
If a law classifies individuals on a basis outside the scope of Article I, Section 3, it will be upheld unless a member of the disadvantaged class shows that the law does not further any suitable appropriate state interest. *1303 Crier v. Whitecloud, 496 So.2d 305 (La. 1986) (on reh'g.).
We find La.Code Civ.P. art. 1732(6) does not classify individuals on the basis of the characteristics found in Article I, Section 3. Therefore, the "appropriate state interest test" applies to the present case because the purpose of La.Code Civ.P. art. 1732(6) was to make the procedure in state admiralty cases consistent with the procedure used in federal admiralty cases. Sons, supra, at 230. Clearly, the State has a legitimate interest in wishing to make the procedures similar. Additionally, the State has a legitimate interest in minimizing the delays and greater court costs which generally are associated with jury trials. Rudolph v. Massachusetts Bay Ins. Co., 472 So.2d 901 (La.1985). Therefore, appellants have not carried their burden of proving that the law does not further a legitimate state interest.
Ergo, we find La.Code Civ.P. art. 1732(6) does not violate the United States or Louisiana Constitutions.

ISSUE TWO
Appellants complain that Mr. Charles Arnold, in his personal capacity, should not be held responsible for liability under the Jones Act because he was not personally appellee's employer.
Our jurisprudence tells us that the Jones Act requires that an employer-employee relationship exist before liability may be imposed. Volyrakis v. M/V Isabelle, 668 F.2d 863 (5th Cir.1982).
We recognize it is possible for a seaman to have more than one Jones Act employer. An employer who issues checks and who maintains some control over the employee will generally be a Jones Act employer without more, but a seaman can also prove that some other person has sufficient control over him, or sufficient connexity with his employment, to be treated as an additional employer. See, Guidry v. S. Louisiana Contractors, Inc., 614 F.2d 447 (5th Cir. 1980). At the time of the accident, appellee believed he was working for Marine Towing. Mr. Arnold's testimony revealed that Marine Towing was, in reality, only a common paymaster and owned no assets of its own. Actually appellee was employed by Riverside. We conclude that, as a matter of law, both Marine Towing and Riverside had enough connexity with appellee's employment to be considered his Jones Act employer.
However, this does not allow the court to hold Mr. Charles Arnold personally responsible for liability imposed on his corporations. In order to impose such liability, the court would have to pierce the corporate veil, and there has been no evidence presented or any finding by the court to support such an action.
Therefore, since the imposition of liability under the Jones Act requires an employer-employee relationship and Mr. Charles Arnold was not appellee's employer, he should not be personally liable to appellants.

ISSUE THREE
Because of the remedial nature of the Jones Act and its imposition of a higher standard of care, liability results upon a showing of only "slight negligence" and the plaintiff's burden to show causation is "featherweight." Johnson v. Offshore Express, Inc., 845 F.2d 1347 (5th Cir.1988); Allen v. Seacoast Products, Inc., 623 F.2d 355 (5th Cir.1980).
The trial court found three specific instances of appellants' negligence and further found there was no contributory negligence by the appellee. Also, the trial court found that the chain of medical evidence indicates that appellee suffered disabling injuries to his cervical spine with varying degrees of pathology at three levels. On the other hand, the record shows that the appellants failed to show there was no reasonable evidentiary basis for the trial court's findings as to appellants' Jones Act negligence; ergo, these findings will not be disturbed. Mistich v. Pipelines, Inc., supra.

ISSUE FOURANALYSIS
The amount of maintenance to which a seaman is entitled is a question of fact to be decided based upon the evidence presented. Any doubts or ambiguities in the application of the law of maintenance and cure are resolved in favor of the seaman.
*1304 The trial court's determination as to the amount of maintenance will not be overturned on appeal unless clearly wrong. Comeaux v. Basin Marine, supra.
The trial court found that appellants owed appellee maintenance and cure at the rate of $15 a day from the date of January 2, 1990, through July 31, 1990, which is the date on which the court found appellee obtained maximum cure. Appellants have not shown these determinations by the trial court were clearly wrong, and, as such, we will not disturb such findings.

ISSUE FIVE
The record shows that, on the morning of trial, appellee settled with Dravo Marine for $2500. In its Reasons for Judgment, the court ordered the verdict to be reduced by the amount of appellee's settlement with Dravo Marine but did not assign a percentage of fault to Dravo Marine.
Our jurisprudence tells us that, prior to the United States Supreme Court's ruling in McDermott v. AmClyde, ___ U.S. ___, 114 S.Ct. 1461,128 L.Ed.2d 148 (1994), the courts of appeal had split into two divergent lines of reasoning concerning the effect which a plaintiff's settlement has on the remaining defendants. The first line being that there would be a reduction of damages based on the proportionate fault of the settling tortfeasor and the second being that there would be a pro tanto, dollar for dollar, credit of the settlement against the verdict.
On December 21, 1993, when the trial court issued its ruling in this matter, the controlling law in this Circuit was the pro tanto approach, as set forth in McDermott v. AmClyde, 979 F.2d 1068 (5th Cir.1994). On April 20, 1994, the United States Supreme Court, in McDermott v. AmClyde, ___ U.S. ___, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994), resolved the conflict among the circuits holding that a non-settling defendant's liability is calculated by reducing the judgment by the proportionate fault of all settling tortfeasors and not by a pro tanto reduction of the dollar amount of the settlement.
In light of this scenario, the appellants urge remand for a determination of fault by the trial court on the part of Dravo Marine. We agree.
It is axiomatic that a change in the law brought about by judicial decision will be given effect in judgments on direct appeal. Clarke v. Tandy Corp., 559 So.2d 508 (La.App.2d Cir.1990); Friday v. Mutz, 483 So.2d 1269 (La.App. 4th Cir.1986). When a change in law occurs between the time of trial and a subsequent appeal, it would be fundamentally unfair for us to consider an issue without allowing the parties an opportunity to relitigate the matter at the trial level. Comeaux v. Roy, 469 So.2d 478 (La.App. 3d Cir.1985), appeal after remand, 517 So.2d 1090 (La.App. 3d Cir.1987).
Since all the parties prepared and tried this case under the belief that the "pro tanto" approach was the correct law, the record is not complete concerning the fault of Dravo Marine. Ergo, this matter will be remanded for a determination of fault on the part of Dravo Marine.
We find that La.Code Civ.P. art. 1732(6) does not unconstitutionally deprive appellants of the right to a jury trial.
We find that the trial court did not err in any of its findings of fact in this matter.
In addition, we find that, in light of the United States Supreme Court's holding in McDermott, this matter is hereby remanded to the trial court in order that a percentage of fault may be assigned to Dravo Marine. Each party to this appeal is to bear its own costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART.
NOTES
[1] Mistich was overruled on other grounds. See, Bridgett v. Odeco, Inc., 93-1536, 94-0112 (La. App. 4th Cir. 12/15/94), 646 So.2d 1249, writ denied, 651 So.2d 840 (La. 1995).