STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 12-558


PAUL JONES

VERSUS

HOWARD McCALL, INC., ET AL.



**********

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-17374
HONORABLE PENELOPE Q. RICHARD, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Jimmie C. Peters, James T. Genovese, and Shannon J. Gremillion, Judges.


AFFIRMED.


Robert Joseph Killeen  Jr.
Robert C. Stern
Killeen & Stern, PC
1770 St. James Place, Suite 300
Houston, TX 77056
(713) 626-5100
COUNSEL FOR DEFENDANT/APPELLANT:
      ABCCO Services, Inc.

**David C. Whitmore**
**Lawrence Blake Jones**
**Scheuermann & Jones**
**701 Poydras Street, Suite 4100**
**New Orleans, LA 70139-7773**
**(504) 525-4361**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
 **Paul Jones**

**J. Rock Palermo, III**
**Veron, Bice, Palermo & Wilson, L.L.C.**
**P. O. Box 2125**
**Lake Charles, LA 70602-2125**
**(337) 310-1600**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
 **Cameron Charter Vessels, Inc.**
 **Howard McCall, Inc.**

**Matthew R. Richards**
**Johnson, Rahman & Thomas**
**P.O. Box 98001**
**Baton Rouge, LA 70898-9001**
**(225) 231-0521**
**COUNSEL FOR INTERVENOR/APPELLEE:**
 **Louisiana Workers' Compensation Corporation**

**PETERS, J.**

This litigation arises from an accident which occurred onboard the vessel M/V *Howard McCall.* A jury determined that the plaintiff, Paul Jones, was a Jones Act seaman and awarded him maintenance and cure benefits. The defendant, ABCCO Services, Inc. (ABCCO), perfected this appeal, raising two assignments of error. For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

The facts in this litigation are basically undisputed. ABCCO's business is that of sandblasting and painting structures, both onshore and offshore. When the structure to be sandblasted and/or painted is located offshore, ABCCO contracts with other companies to transport its employees and equipment, either by vessel or helicopter, to the offshore structure. If the offshore structure undergoing refurbishment has adequate space, ABCCO stores and operates it equipment on the structure and its employees live on the structure until the job is completed. With regard to those structures where adequate space is not available, ABCCO normally contracts for the services of a vessel from another company and that vessel transports its employees and equipment to the structure. Additionally, both the employees and equipment remain housed on the vessel until the job is completed, and the vessel acts as a platform for ABCCO's work.

In the situations where vessels are used, ABCCO also normally contracts to take all steps necessary to see that the vessel finishes the contract in the same condition it began. To this end, ABCCO often sandblasts and paints those sections of the vessel where overspray from the work performed on the offshore structure has occurred. At the time of the January 18, 2005 incident giving rise to this

litigation, Paul Jones had worked for ABCCO or its predecessor company for a period of approximately five years.

The litigation arises from a 2004 contract wherein Duke Energy retained ABCCO to sandblast and repaint an offshore platform (identified as West Cameron No. 272, located in the Gulf of Mexico off Cameron, Louisiana). The work crew assigned to this job, including Mr. Jones, were transported to the platform by the M/V *Howard McCall*, a vessel owned and operated by Howard McCall, Inc. and Cameron Charter Vessel, Inc. (referred to collectively as "Cameron Charter"). The sandblasting and painting of the offshore rig took two and one-half months of work which, with breaks, extended from late July of 2004, to late December of that same year. At all times when engaged in sandblasting and painting the structure, Mr. Jones and the other ABCCO employees slept and ate on board the M/V *Howard McCall*, stored equipment on board the vessel, and even used it as a work platform. At the completion of the job, the M/V *Howard McCall* transported the ABCCO crew back to its dock in Grand Chenier, Louisiana.

In mid-January 2005, Mr. Jones and another ABCCO employee returned to Grand Chenier with instructions to sandblast and paint portions of the M/V *Howard McCall*. On the morning of January 18, 2005, Mr. Jones sustained personal injuries when he fell as he was exiting the vessel's wheelhouse. Soon thereafter, Louisiana Workers' Compensation Corporation (LWCC), ABCCO's workers' compensation insurer, began paying benefits to Mr. Jones.

On June 6, 2006, Mr. Jones filed suit against ABCCO, Howard McCall, Inc., and Cameron Charter Vessel, Inc., pursuant to the saving-to-suitors clause,[1]

---

[1] The saving-to-suitors clause is found in 28 U.S.C.A. § 1333.

alleging two causes of action resulting from his January 18, 2005 accident. First, he asserted that as a Jones Act seaman, all three defendants were liable to him pursuant to the federal general maritime law and the Jones Act, 46 App. U.S.C.A. § 688, [2] or alternatively, pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 *et seq.* In his second claim, Mr. Jones asserted that as he was rendered unfit for duty as a result of his accident, he was entitled to maintenance and cure. The effect of these pleadings was to raise three claims for relief: negligence, unseaworthiness, and maintenance and cure. Thereafter, LWCC intervened in Mr. Jones' suit seeking recovery of the workers' compensation benefits it had paid Mr. Jones on behalf of ABCCO.

The matter was tried over two consecutive days beginning on May 16, 2001. By that time, the trial court had already granted Cameron Charter a summary judgment and had dismissed Mr. Jones' claim that the M/V *Howard McCall* was unseaworthy at the time of the accident. Additionally, before the matter went to the jury for decision, the trial court granted directed verdicts in favor of all the defendants on the negligence issue.

The jury then returned a verdict on the remaining issues. Specifically, it found that Mr. Jones was a Jones Act seaman, that he was injured on January 18, 2005, that he had reached maximum medical improvement, and that he was entitled to awards of maintenance and cure. The jury set the awards at $8,580.00 and $9,754.00 respectively.

---

[2] Title 46 of the United States Code was codified by the United States Congress beginning in 2005. On October 6, 2006, the Congress completed its efforts in this endeavor, which included the restatement of 46 App. U.S.C.A. § 688 to 46 U.S.C.A. § 30104. However, as Mr. Jones' accident occurred prior to October 6, 2006, the prior version of the Jones Act applies.

On July 25, 2011, the trial court executed a judgment conforming with the jury verdict, and on January 10, 2012, the trial court rejected ABCCO's motion for new trial. Thereafter, ABCCO perfected this appeal.

In its appeal, ABCCO asserts two assignments of error:

1. The jury erred in finding that Appellee, Paul Jones ("Jones"), was a Jones Act seaman as the evidence presented at trial was insufficient to support the verdict rendering it clearly contrary to the law and the evidence. There is almost no evidence to support a finding that Jones was a Jones Act seaman. . . .

2. [T]he Court erred in failing to offset the jury's maintenance and cure award according to the amounts previously paid in workers' compensation indemnity benefits and for Jones' medical expenses in clear contravention of the law. . . .

## OPINION

### *Standard Of Review*

Although Mr. Jones' claims arise under general maritime law and the Jones Act, Louisiana's manifest error/clearly wrong standard of review is applied on appeal. *Milstead v. Diamond M Offshore, Inc.*, 95-2446 (La. 7/2/96), 676 So.2d 89. As this standard of review is well established, we need not reiterate it here.

### *Assignment of Error Number One*

ABCCO first argues that the jury erred in finding that Mr. Jones qualified as a Jones Act seaman. The leading case on this issue is the United States Supreme Court's opinion in *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172 (1995). In that case, Justice O'Connor, after revisiting the history and case law evolving from the question of who qualifies for Jones Act seaman status, concluded:

> From this background emerge the essential contours of the "employment-related connection to a vessel in navigation," [*McDermott International, Inc. v.*] *Wilander*, 498 U.S. [337,] 355, 111 S.Ct. [807,] 817, required for an employee to qualify as a seaman under the Jones Act. We have said that, in giving effect to the term "seaman," our concern must be "to define the meaning for the purpose of a particular statute" and that its use in the Jones Act "must be read

4

in the light of the mischief to be corrected and the end to be attained." [*Goltra v.*] *Warner,* 293 U.S. [155,] 158, 55 S.Ct. [46,] 48. Giving effect to those guiding principles, we think that the essential requirements for seaman status are twofold. First, as we emphasized in *Wilander,* "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.'" 498 U.S., at 355, 111 S.Ct., at 817 (quoting [*Offshore Co. v.*] *Robison,* 266 F.2d [769,] 779). The Jones Act's protections, like the other admiralty protections for seamen, only extend to those maritime employees who do the ship's work. But this threshold requirement is very broad: "All who work at sea in the service of a ship" are *eligible* for seaman status. 498 U.S., at 354, 111 S.Ct., at 817.

Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea. See 1B A. Jenner, Benedict on Admiralty § 11a, pp. 2–10.1 to 2–11 (7th ed. 1994) ("If it can be shown that the employee performed a significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied" (footnote omitted)). This requirement therefore determines which maritime employees in *Wilander*'s broad category of persons eligible for seaman status because they are "doing the ship's work," 498 U.S., at 355, 111 S.Ct., at 817, are in fact entitled to the benefits conferred upon seamen by the Jones Act because they have the requisite employment-related connection to a vessel in navigation.

It is important to recall that the question of who is a "member of a crew," and therefore who is a "seaman," is a mixed question of law and fact. Because statutory terms are at issue, their interpretation is a question of law and it is the court's duty to define the appropriate standard. *Wilander,* 498 U.S., at 356, 111 S.Ct., at 818. On the other hand, "[i]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of a crew,' it is a question for the jury." *Ibid.* See also *Senko* [*v. LaCrosse Dredging Corp.*]*,* 352 U.S. [370,] 374, 77 S.Ct. [415,] 417 (explaining that "the determination of whether an injured person was a 'member of a crew' is to be left to the finder of fact" and that "a jury's decision is final if it has a reasonable basis"). The jury should be permitted, when determining whether a maritime employee has the requisite employment-related connection to a vessel in navigation to qualify as a member of the vessel's crew, to consider all relevant circumstances bearing on the two elements outlined above.

5

In defining the prerequisites for Jones Act coverage, we think it preferable to focus upon the essence of what it means to be a seaman and to eschew the temptation to create detailed tests to effectuate the congressional purpose, tests that tend to become ends in and of themselves. The principal formulations employed by the Courts of Appeals—"more or less permanent assignment" or "connection to a vessel that is substantial in terms of its duration and nature"—are simply different ways of getting at the same basic point: The Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to "the special hazards and disadvantages to which they who go down to sea in ships are subjected." [*Seas Shipping Co. v.*] *Sieracki,* 328 U.S. [85,] 104, 66 S.Ct. [872,] 882 (Stone, C.J., dissenting). Indeed, it is difficult to discern major substantive differences in the language of the two phrases. In our view, "the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon." *Wallace v. Oceaneering Int'l,* 727 F.2d 427, 432 (CA5 1984). The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

Although we adopt the centerpiece of the formulation used by the Court of Appeals in this case—that a seaman must have a connection with a vessel in navigation that is substantial in both duration and nature—we should point out how our understanding of the import of that language may be different in some respects from that of the court below. The Court of Appeals suggested that its test for seaman status "does not unequivocally require a Jones Act seaman to be substantially connected to a vessel" in terms of time if the worker performs important work on board on a steady, although not necessarily on a temporally significant, basis. 20 F.3d, at 53. Perhaps giving effect to this intuition, or perhaps reacting to the temporal gloss placed on the *Robison* language by later Fifth Circuit decisions, the court phrased its standard at one point as requiring a jury to find that a Jones Act plaintiff's contribution to the function of the vessel was substantial in terms of its duration *or* nature. 20 F.3d, at 57. It is not clear which version ("duration or nature" as opposed to "duration and nature") the Court of Appeals intended to adopt for the substantial connection requirement—or indeed whether the court saw a significant difference between the two. Nevertheless, we think it is important that a seaman's connection to a vessel in fact be substantial in both respects.

We agree with the Court of Appeals that seaman status is not *merely* a temporal concept, but we also believe that it necessarily

6

includes a temporal element. A maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land based and therefore not a member of the vessel's crew, regardless of what his duties are. Naturally, substantiality in this context is determined by reference to the period covered by the Jones Act plaintiff's maritime employment, rather than by some absolute measure. Generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. As we have said, "[t]he inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it." *Wilander,* 498 U.S., at 356, 111 S.Ct., at 818. Nevertheless, we believe that courts, employers, and maritime workers can all benefit from reference to these general principles. And where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict. See, *e.g., Palmer* [*v. Fayard Moving and Transp. Corp.*], 930 F.2d [437,] 439.

On the other hand, we see no reason to limit the seaman status inquiry, as petitioners contend, exclusively to an examination of the overall course of a worker's service with a particular employer. Brief for Petitioners 14–15. When a maritime worker's basic assignment changes, his seaman status may change as well. See *Barrett* [*v. Chevron, U.S.A., Inc.*], 781 F.2d [1061,] 1077 (Rubin, J., dissenting) ("An assignment to work as a crew member, like the voyage of a vessel, may be brief, and the *Robison* test is applicable in deciding the worker's status during any such employment"); *Longmire* [*v. Sea Drilling Corp.*], 610 F.2d [1342,] 1347, n. 6. For example, we can imagine situations in which someone who had worked for years in an employer's shoreside headquarters is then reassigned to a ship in a classic seaman's job that involves a regular and continuous, rather than intermittent, commitment of the worker's labor to the function of a vessel. Such a person should not be denied seaman status if injured shortly after the reassignment, just as someone actually transferred to a desk job in the company's office and injured in the hallway should not be entitled to claim seaman status on the basis of prior service at sea. If a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position. See Cheavens, [Terminal Workers' Injury and Death Claims,] 64 Tulane L.Rev., [361,] 389–390. Thus, nothing in our opinion forecloses Jones Act coverage, in appropriate cases, for Justice STEVENS' paradigmatic maritime worker injured while reassigned to "a lengthy voyage on the high seas," *post,* at 2198. While our approach maintains the status-based

7

inquiry this Court's earlier cases contemplate, we recognize that seaman status also should not be some immutable characteristic that maritime workers who spend only a portion of their time at sea can never attain.

*Id.* at 368-72; 2189-92.

The only evidence on this issue presented to the jury was the testimony of Mr. Jones, and that testimony is basically undisputed. The evidentiary record as provided through Mr. Jones, establishes that employment with ABCCO is seasonal and provides only eight to nine months per year of employment. ABCCO does not own or operate any vessels in its business, but sixty percent of the time Mr. Jones reached the job site via a vessel. Often during the forty percent of the time when he was transferred by helicopter, a vessel would be on location for ABCCO's use. Approximately sixty percent of Mr. Jones' actual work offshore was performed on the structure, and forty percent on a vessel. Although Mr. Jones did perform some land-based jobs for ABCCO, at least eighty percent of the jobs he worked for ABCCO were offshore.

While working on the Duke Energy platform, Mr. Jones was assigned to the M/V *Howard McCall.* The vessel provided transportation to and from the platform and was moored at that location every day work was performed. While offshore, the ABCCO crew worked twenty-one to twenty-eight-day shifts with seven days off in between shifts. During the Duke Energy job, Mr. Jones and other members of the ABCCO crew slept, ate, and stored its equipment on the M/V *Howard McCall.* Additionally, the vessel served as a work platform during the sandblasting and painting operation.

When the crew completed the sandblasting/painting job on the Duke Energy platform in December of 2004, Mr. Jones and the other members of the work crew were transported by the M/V *Howard McCall* for the last time to the vessel's

Grand Chenier dock. Mr. Jones and another ABCCO employee returned to the vessel after the Christmas Holidays to sandblast and repaint the vessel pursuant to ABCCO's agreement to return the vessel to its original condition. It was during this period that Mr. Jones sustained his injuries.

Mr. Jones' duties on the M/V *Howard McCall* did not include operational duties. Still, while he was not responsible for major maintenance on the vessel, he did help to clean and tidy up the vessel on a regular basis. While ABCCO's equipment was secured on, and operated from, the vessel, none of it was ever permanently attached. At the end of any job, the ABCCO employees removed all of its equipment from the vessel.

Considering the foregoing evidence, we find no manifest error in the jury's finding that factually, Mr. Jones was a Jones Act seaman. The evidence established that ABCCO retained the services of the M/V *Howard McCall* to assist its crew in refurbishing the Duke Energy platform. Because the mission of the vessel was to assist the ABCCO crew in performing ABCCO's contract with Duke Energy, it follows that Mr. Jones' sandblasting/painting duties contributed to the accomplishment of the M/V *Howard McCall's* mission. Furthermore, Mr. Jones presented evidence to the jury establishing that his connection with the M/V *Howard McCall* was substantial in terms of both duration and nature. We find no manifest error in the jury's factual conclusion that Mr. Jones had the status of a seaman. We find no merit in this assignment of error.

### *Assignment of Error Number Two*

In this assignment of error, ABCCO asserts that the trial court erred in not recognizing an offset in its favor to the maintenance and cure awards by amounts

9

previously paid Mr. Jones pursuant to its workers' compensation policy with LWCC. We find no merit in this assignment as well.

In its intervention, LWCC sought repayment of the amounts it had paid to Mr. Jones based on its claim that it was subrogated to Mr. Jones' rights against ABCCO. During the trial on the merits, all the parties to the litigation entered into a written stipulation regarding the amount of workers' compensation benefits LWCC had paid Mr. Jones for the accident sued upon pursuant to its policy with ABCCO. This stipulation reflects that as of May 4, 2011, LWCC had paid Mr. Jones $17,096.95 in compensation benefits; $8,844.96 in medical expenses; and $366.20 in vocational rehabilitation expenses.

In a June 6, 2011 motion, ABCCO complained that the workers' compensation issue was not addressed by the proposed judgment submitted to the trial court by Mr. Jones. Specifically, ABCCO complained that the proposed judgment "was silent as to the credit for which ABCCO is entitled to in light of" the payments made by LWCC. Although the record of these proceedings reflects that the trial court set the motion for a hearing on July 25, 2011, there is no evidence a hearing was ever held. Instead, on July 25, 2011, the trial court executed a judgment conforming to the jury's award, but silent as to the question of whether a credit was available to ABCCO or any other party.[3] Thereafter, ABCCO moved for a new trial on the issues of seaman status, offset of maintenance and cure awards, and legal interest. After a hearing on its motion for new trial, the trial court specifically rejected ABCCO's request for an offset.

> "Maintenance and cure" is an ancient duty imposed upon the owner of a ship to provide food, lodging and necessary medical

---

[3] The judgment does not mention any ruling by the trial court on the issue of LWCC's petition of intervention.

10

services to seamen who become ill or injured during service to the ship. *Burgess v. C.F. Bean Corp*[.], 98-3072 (La.App. 4th Cir.8/18/99), 743 So.2d 251; *Comeaux v. Basin Marine, Inc.*, 93-1624 (La.App. 1st Cir.6/24/94), 640 So.2d 833, 836, *writ denied*, 94-2307 (La.11/18/94), 646 So.2d 386; *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1245 (5th Cir.1994), *cert. denied*, 513 U.S. 819, 115 S.Ct. 78, 130 L.Ed.2d 32 (1994). Recovery is not [dependent] upon negligence of the vessel or the owner and the burden of proof in seeking maintenance and cure is relatively light. *Id.* In addition, generally, a seaman need only prove that the injury arose during his service of the vessel. The seaman does not have to prove a causal connection to his duties. *Liner v. J.B. Talley and Company, Inc.*, 618 F.2d 327, 332 (5th Cir.1980); *Burgess v. C.F. Bean Corp*[.], supra; *Comeaux v. Basin Marine, Inc.*, 640 So.2d at 836. The right to maintenance and cure exists regardless of fault. The remedy is essentially curative in nature and is not intended as compensation for injury. *Boudreau v. S/V SHERE KHAN C, in rem*, 27 F.Supp.2d 72, 83 (D.Maine 1998). The right to maintenance and cure arises from the employee-employer relationship. *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 731, 63 S.Ct. 930, 934, 87 L.Ed. 1107 (1943) Thus, the liability of shipowner for maintenance and cure will be excused only by willful misbehavior or deliberate act of indiscretion on part of seaman. *Aguilar v. Standard Oil Co.*, 318 U.S. at 731, 63 S.Ct. at 934; *DiBenedetto v. Williams*, 880 F.Supp. 80, 86 (D. Rhode Island 1995).

Cure is payment of the seaman's medical, therapeutic and hospital expenses, until that point in time when plaintiff reaches maximum medical recovery. *Fox v. Texaco, Inc.*, 97 2126 (La.App. 1st Cir.11/6/98), 722 So.2d 1064, 1067. Because it not fault based, but arises from the contractual relationship between the parties, defendant cannot avail itself of the apportionment of fault to reduce its liability for plaintiff's medical expenses.

*Domonter v. C.F. Bean Corp.*, 99-1204, pp. 17-18 (La.App. 3 Cir. 4/25/00), 761 So.2d 629, 640, *writ denied*, 00-1872 (La. 9/29/00), 770 So.2d 354 (footnote omitted) (alteration ours).

In *Commercial Union Insurance Co. v. McKinnon*, 10 F.3d 1352, 1354 (8th

Cir. 1993) the Eighth Circuit stated:

Section 688(a) of the Jones Act provides that "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law." The Supreme Court has held that this language provides a seaman's exclusive remedy. *Northern Coal & Dock Co. v. Strand*, 278 U.S. 142, 147, 49 S.Ct. 88, 89, 73 L.Ed. 232 (1928). To give substance to this rule, any recovery received under the Jones Act should be reduced by any payments previously received under a state's workers' compensation law. *See Biggs v. Norfolk Dredging Co.*, 360 F.2d 360, 364 (4th

Cir.1966); *Spiller v. Lowe*, 328 F.Supp. 54, 64 (W.D.Ark. 1971), *aff'd on other grounds*, 466 F.2d 903 (8th Cir. 1972).

Furthermore, 33 U.S.C.A. § 903(e) of the Longshore and Harbor Workers' Compensation Act provides a credit for benefits paid to an employee under this statute:

> Notwithstanding any other provision of law, any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under this chapter pursuant to any other workers' compensation law or section 688 of Title 46, Appendix (relating to recovery for injury to or death of seamen), shall be credited against any liability imposed by this chapter.

The record before us does not reflect that LWCC's intervention has been disposed of although at the argument on the motion for new trial, Mr. Jones' counsel seemed to acknowledge that LWCC is entitled to a credit. What is clear from the record is that ABCCO paid nothing to Mr. Jones, other than through its workers' compensation insurer, and is not entitled to an offset for funds not paid. We find no error in the trial court's conclusion that ABCCO is not entitled to a direct offset for the amounts paid by its workers' compensation insurer to Mr. Jones.

## DISPOSITION

For the foregoing reasons, we affirm the judgment of the trial court in all respects. We assess all costs of this appeal to the defendant, ABCCO Services, Inc.

**AFFIRMED.**